Martin GRAFF, Jr., Individually and on behalf of all others similarly situated, Plaintiff,

v.

William J. NICHOLL, etc., et al., Defendants.

No. 73 C 170.

United States District Court, N. D. Illinois, E. D.

Jan. 9, 1974.

---

976

Robert H. Smith, Mandel Legal Aid Clinic, Chicago, Ill., for plaintiff.

Richard L. Curry, Corp. Counsel, Chicago, Ill., for City of Chicago defendants.

William J. Scott, Atty. Gen. of Ill., Chicago, Ill., for the State of Illinois defendants.

Before CUMMINGS, Circuit Judge, and DECKER and TONE, District Judges.

## MEMORANDUM OPINION

### PER CURIAM.

This lawsuit challenges the validity of certain provisions of the Illinois Vehicle Code, Ill.Rev.Stat. ch. 95½, §§ 4–200 through 4–214, and related sections of the Municipal Code of Chicago, §§ 27–360, –367, –372, –372.1, 27–423 through 27–429, which authorize law enforcement agencies to seize and dispose of "abandoned" motor vehicles. The defendants include the City of Chicago; James McQuire, Superintendent of the Illinois State Police at the time of the events complained of; Richard J. Elrod, Sheriff of Cook County; James B. Conlisk, Jr., Superintendent of the Chicago Police Department during the period in question; William J. Nicholl, Commanding Officer, Automotive Pounds Section, Chicago Police Department; Michael B. Costello, a Chicago policeman; and John Doe, a person of unknown identity who towed the plaintiff's automobile.[1]

The first count of the amended complaint seeks declaratory and injunctive relief on the grounds that the statutory provisions violate the Fourth and Fourteenth Amendments to the U. S. Constitution, in that they provide for the seizure and detention by the state of private property—motor vehicles—without prior notice or an opportunity for a hearing, permit the sale or destruction by the state of such property without a prior hearing, authorize seizure and detention of motor vehicles without a search warrant or a judicial determination of probable cause, and, finally, deny equal protection to those indigent persons, like the plaintiff (who are unable to pay the towing and "storage" charg-es necessary to recover their vehicles, even though they may be found innocent of, or never charged with, the misdemeanor of "abandonment".[2] The second count asserts that the challenged provisions of the Municipal Code of Chicago violate the Fourth and Fourteenth Amendments in essentially the same respects as the statutory provisions. The final count seeks damages for the plaintiff's loss of use of his automobile during the period it was held by the city. Jurisdiction in this court is based upon 28 U.S.C. §§ 1331; 1343(3), (4); 2281; 2284; and 42 U.S.C. § 1983.

On January 23, 1973, a temporary restraining order was entered, forbidding destruction or sale of plaintiff's automobile pending its return to plaintiff and a further hearing on the merits. The order further restrained plaintiff from selling or otherwise disposing of the vehicle upon his regaining possession of it, pending the outcome of this lawsuit.

This three-judge court was convened pursuant to 28 U.S.C. § 2281. The matter is presently before the court upon the defendants' motion to dismiss the suit for lack of subject matter jurisdiction and for failure to state a cause of action, and upon plaintiff's cross-motion for partial summary judgment.[3] Since the defendants' motion to dismiss for failure to state a claim presents matters outside the pleadings, that motion will be treated as one for summary judgment, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### FACTS

The undisputed facts, as alleged in the amended complaint[4] or found upon an

---

1. Since the institution of this litigation, the John Doe defendant has been identified as Al Woods, Bureau of Streets and Sanitation, City of Chicago. With the exception of the City of Chicago, the defendants are sued individually and in their official capacities.

2. Any person who abandons a motor vehicle, as proscribed in Ill.Rev.Stat. ch. 95½, § 4–200, is guilty of a misdemeanor and may be fined not less than $25 nor more than $100. Ill.Rev.Stat. ch. 95½, § 4–214. In contrast, the Municipal Code of Chicago provides that any person who abandons his motor vehicle shall be fined not less than $25 nor more than $200. MCC § 27–372.1.

3. The plaintiff has sought summary judgment "on the issue of defendants' liability only," which the court has construed to refer to the constitutional questions exclusively.

4. For purposes of a motion to dismiss, all well-pleaded facts in the complaint must be

evidentiary hearing held before a single judge, are as follows: The plaintiff, Martin Graff, Jr., is the owner of a 1963 Triumph automobile, which is registered in his name with the State of Illinois and the City of Chicago, and which, at all relevant times, displayed the required license plates and vehicle stickers, and was parked in the public street across from the plaintiff's house. For approximately one month prior to November 10, 1972, the left front axle of plaintiff's vehicle had been raised off the ground, supported by a milk crate. Plaintiff testified that the car was left in this position because a part necessary for the operation of the left front wheel had been broken and a replacement ordered from England had not been received. In all other respects the body was intact and the car was operable.[5] On November 10, 1972, defendant Costello placed a "Police Notice" on the windshield of plaintiff's automobile, which stated that the car was an abandoned motor vehicle in violation of section 27–372 of the Municipal Code of Chicago, and, after quoting that provision, warned that unless the car was moved[6] it would be towed and impounded by the police. Officer Costello testified that the notice was placed on the car because, in his opinion, the vehicle was in a state of disrepair rendering it incapable of being driven.[7] On November 20th, when defendant Costello returned to inspect the vehicle, the notice was not on the automobile. Since it appeared that the car was in the same condition as it had been on November 10th, and that it had not been moved since that date, Officer Costello ordered its removal as an abandoned vehicle. On November 21st, defendant Woods towed plaintiff's car to a Chicago auto pound.

The aforementioned police sticker was the only notice directed to the plaintiff prior to the towing of his automobile.[8] Graff testified that he never saw this notice and there was no evidence to indicate how long it had remained on the automobile.

On November 22nd, after determining that Graff was the owner of the vehicle, Officer Nicholl, on behalf of the Automotive Pounds Section of the Chicago Police Department, sent plaintiff a registered letter informing him that his car was in police custody and could be regained by proof of ownership and payment of a $20 towing fee and $2 per diem storage charges. On December 4th, plaintiff proved his title to and registration for the automobile, but, in light of his inability to pay the towing and storage fees, and his refusal to accept defendant Nicholl's offer to reduce said charges,[9] the vehicle was not released. Pursuant to applicable statutes and ordinances[10] the practice of the Automotive Pounds Section is to destroy cars as old as the plaintiff's when the foregoing charges are not paid within 30 days from the mailing of the letter of notification.

taken as admitted. Ricci v. Chicago Mercantile Exchange, 447 F.2d 713, 715 (7th Cir. 1971); 2A Moore's Federal Practice ¶ 12.08, at 2266–67 (1972).

5. Plaintiff occasionally washed and started the car during the period that the vehicle was disabled.

6. Although the sticker contains space for the officer to specify the date by which a vehicle must be moved, the record does not disclose the length of time plaintiff was given to move his automobile.

7. This is one of the two conditions under the Code which justifies a presumption of abandonment. See MCC § 27–372. This provision is set forth in toto in the text infra.

8. Graff and his father confronted defendant Woods on November 21st when the latter began to tow plaintiff's car, and indicated to him that Graff was the owner of the automobile and that it was not abandoned. Since Woods was under police orders to tow the vehicle, he advised plaintiff that he had no discretion to do otherwise.

9. Plaintiff rejected the offer of adjustment on the ground that since the taking and detention were unconstitutional, he should not have to pay any fees or charges.

10. Ill.Rev.Stat. ch. 95½, § 4–209; MCC § 27–429.

## SUBJECT MATTER JURISDICTION

■ The defendants have cited no authority and have presented no argument in support of their contention that the court lacks subject matter and personal jurisdiction. Such an assertion appears frivolous. No objection to the service of process in Illinois has been made. Subject matter jurisdiction is conferred by 28 U.S.C. § 1343(3) and (4). Moreover, claims under the U. S. Constitution and federal statutes may be dismissed only when the contention "appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682–683, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). See Sigafus v. Brown, 416 F.2d 105, 107 (7th Cir. 1969). Dismissal of this action would be signally inappropriate in light of numerous recent cases suggesting that statutes and ordinances which authorize a taking and disposition of private property, or a deprivation of an important interest, without notice or an opportunity for a hearing, deserve strict scrutiny under the Due Process Clause of the Fourteenth Amendment. See, e. g., Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Scott v. Danaher, 343 F.Supp. 1272 (N.D.Ill. 1972) (three-judge court); Collins v. Viceroy Hotel Corp., 338 F.Supp. 390 (N.D.Ill.1972).

## THE ILLINOIS MOTOR VEHICLE CODE PROVISIONS FOR ABANDONED VEHICLES

■ Under the Illinois Motor Vehicle Code, it is unlawful to abandon [11] a motor vehicle on any highway,[12] or on private or public property, other than a highway, unless on property of the owner or bailee of the vehicle. Ill. Rev.Stat. ch. 95½, § 4–200. A motor vehicle thus abandoned on private property "may be authorized for removal by a law enforcement agency having jurisdiction after a waiting period of 7 days or more has expired." Ill.Rev.Stat. ch. 95½, § 4–200(b). When an abandoned vehicle is brought to the attention of the municipal police, Illinois State Police, or the county sheriff, that law enforcement agency may authorize towing and storage of the vehicle. Ill.Rev.Stat. ch. 95½, § 4–201. If the identity of the owner or other person legally entitled to the vehicle is unknown to the agency which authorizes the impounding, a search must be made of the motor vehicle registration records of the Secretary of State; if the person legally entitled to possession is identified by this investigation, notice is to be sent to him by certified mail advising where the vehicle is held, requesting a disposition of the vehicle, and setting forth public sale information. Ill.Rev.Stat. ch. 95½, § 4–204. The owner may reclaim the vehicle prior to its sale or destruction by proving his ownership or right to possession, and payment of all towing and storage charges. Ill.Rev.Stat. ch. 95½, § 4–206. In cities with a population of more than 500,000, such as Chicago, a vehicle, which remains unclaimed for a period of 15 days after notice is sent to the owner of record, may be disposed of as provided in the "municipal purchasing act for cities of 500,000 or more population [Ill.Rev.Stat. 95½, §§ 8–10–1 et seq.]." Ill.Rev.Stat. ch. 95½, § 4–209. That act provides that goods worth less than $5,000 may be sold by a municipality to the highest bidder, or on the open market in a manner calculated to insure the best interest of the public, after solicitation of bids. Ill.Rev.Stat. ch. 24, § 8–

11. The statute does not define "abandonment".

12. Ill.Rev.Stat. ch. 95½, § 1–126 defines "highway" to include every public way open to the use of the public for purposes of vehicular traffic.

10–3. It is apparent that the statute is more than "enabling legislation" and does, in fact, authorize local law enforcement officials to impound "abandoned" automobiles regardless of whether a local ordinance grants the same authority.

## THE MUNICIPAL CODE OF CHICAGO

Those sections of the Municipal Code of Chicago which provide for impoundment of abandoned motor vehicles parallel the related statute, with the exception that the ordinance is limited to vehicles on a "public way".[13] The Code proscribes the abandonment of any motor vehicle on any public way within the City and provides a fine of not less than $25 nor more than $200 for such abandonment. MCC § 27–372, –372.1. Although the statute does not define abandonment, the Code raises a presumption of abandonment where a vehicle is "standing or parked on the public way, which vehicle is either (a) in such a state of disrepair as to be incapable of being driven in its present condition, or (b) has not been moved or used for more than seven consecutive days and is apparently deserted." MCC § 27–200. See MCC § 27–372. Members of the Chicago Police Department are authorized to remove such vehicles to the nearest city vehicle pound. MCC § 27–360(4). Before the owner of any legally impounded vehicle is permitted to remove the same from police custody, he must furnish evidence of his identity, ownership and right of possession thereto, sign a receipt for the vehicle, and pay a $20 towing fee and the accumulated storage charges. Within 15 days after impoundment, the Police Department must attempt to ascertain from the Secretary of State the name and address of the owner or the person legally entitled to possession of the vehicle, and send a notice containing a full description of the vehicle to such individual by certi-

fied mail, return receipt requested. MCC § 27–425. Whenever an impounded vehicle remains unclaimed for a period of 30 days from the date of impoundment, and after notice is given pursuant to section 27–425, the vehicle may be sold at public auction to the highest bidder. MCC § 27–429.

It should be noted that, with the exception of defining "abandonment" and limiting its applicability to "public ways", the ordinance substantially parrots the policy and procedure of the statute. This essential identity between the enactments warrants joint consideration of their constitutional merits.

## DUE PROCESS

As stated in Cafeteria and Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961),

"[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by the governmental action. . . . . The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation. . . . '"[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' It is 'compounded of history, reason, the past course of decisions . . . .'" Id. at 895, 81 S.Ct. at 1748 (citations omitted).

The private interest that has been affected here by the defendants' actions is the uninterrupted access to and use of one's automobile. The governmental interests alleged to be promoted by the challenged enactments consist generally of the elimination of health and safety hazards, particularly the removal of

---

13. A public way is defined as "[a]ny sidewalk, roadway, alley, or other public thoroughfare open to the use of the public, as a matter of right, for purposes of travel, excepting bridle paths." MCC § 27–200.

traffic hazards and public nuisances, and the prevention of vandalism.

Several recent Supreme Court decisions have established the rule that the Fourteenth Amendment's procedural due process protection attaches to any significant private interest. See Perry v. Sindermann, *supra* (non-tenured college employment); Fuentes v. Shevin, *supra* (household goods); Bell v. Burson, *supra* (driver's license); Goldberg v. Kelly, *supra* (welfare payments).[14] In Bell v. Burson, *supra*, for example, the challenged statutory scheme authorized revocation of the driver's license and vehicle registration of any individual who had been involved in a traffic accident, prior to any determination of his liability. The Court held that, before the state could deprive such a person of these documents, it was required to provide a forum for determining whether there existed a reasonable possibility of a judgment being rendered against him as a result of the accident. Bell v. Burson, *supra*, 402 U.S. at 542, 91 S.Ct. 1586, 29 L.Ed.2d 90.[15] In light of that precedent and the position of motor vehicles as virtual "necessaries for ordinary, day-to-day living" in American society, see, *e. g.*, Adams v. Egley, 338 F. Supp. 614, 621 (S.D.Cal.1972), it cannot reasonably be disputed that the impoundment of one's automobile may constitute or eventuate a "grievous loss". Goldberg v. Kelly, *supra*, 397 U.S. at 263, 90 S.Ct. 1011, 25 L.Ed.2d 287. Thus, before a state or local government may so interrupt its use, the owner is entitled to due prosess.

The possibility that the interference with an owner's access to and use of his vehicle may be temporary does not defeat the plaintiff's constitutional claim.

"[I]t is now well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment. . . . The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property. Any significant taking of property . . . is within the purview of the Due Process Clause." Fuentes v. Shevin, *supra*, 407 U.S. at 84–86, 92 S.Ct. at 1996.

When such substantial private interests are affected by government action, procedural due process demands that notice and an opportunity for a hearing "appropriate to the nature of the case" be granted to the individual against whom the state acts. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). See Grannis v. Ordean, 234 U.S. 385, 394, 34 S.Ct. 779, 58 L.Ed. 1363 (1914). The notice and opportunity to be heard must be granted at a meaningful time and in a meaningful manner. Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Furthermore, the opportunity for a hearing must be given *before* the deprivation takes effect, unless exceptional circumstances justify postponement of the hearing until after the event. See, *e. g.*, Fuentes v. Shevin, *supra*, 407 U.S. at 81–82, 92 S.Ct. 1983; Boddie v. Connecticut, 401 U.S. 371, 378–379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Goldberg v. Kelly, *supra*, 397 U.S. at 263–264, 90 S.Ct. 1011; Sniadach v. Family Finance Corp., *supra*, 395 U.S. at 342, 343, 89 S.Ct. 1820 (Harlan, J., concurring).

Thus, once it has been determined that a significant private interest is af-

---

14. These holdings have spawned substantial litigation. See, *e. g.*, Fuentes v. Shevin, *supra*, 407 U.S. at 72–73 n. 5, 92 S.Ct. 1983, 32 L.Ed.2d 556; Snead v. Department of Social Services, 351 F.Supp. 1360, 1365, 355 F.Supp. 764 (S.D.N.Y.1972); Vail v. Board of Education, 354 F.Supp. 592 (D.N.H. 1973); Holland v. Parker, 354 F.Supp. 196 (D.S.D.1973); Graham v. Knutzen, 351 F. Supp. 642 (D.Neb.1972).

15. "Once licenses are issued, . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees." Bell v. Burson, *supra* at 539, 91 S.Ct. at 1589.

fected by government action, the next question is whether fundamental fairness and practicality require that notice and an opportunity for a hearing, prior to towing, be granted to car owners in the situation before the court. Pursuant to statute, the challenged ordinance creates a presumption of abandonment when a motor vehicle is in "such a state of disrepair as to be incapable of being driven in its present condition, or . . . has not been moved or used for more than seven consecutive days and is apparently deserted." MCC § 27–372. Although, as the facts of this case indicate, it is the practice of the Chicago Police Department to post a notice on cars suspected of being abandoned, neither the statute nor the ordinance prescribe notice. The seven-day waiting period necessary to raise the presumption of abandonment in the case of apparently deserted vehicles strongly suggests that there is no overwhelming necessity for immediate action upon the expiration of this period. As to the second category of abandoned vehicles, those which are in a state of disrepair rendering them incapable of being driven, the ordinance appears to authorize immediate removal, as no waiting period is designated. The "Police Notice" was attached to plaintiff's car in this case because, as the record indicates, Officer Costello considered it to be in the requisite "state of disrepair". Interestingly, an immediate tow was not authorized; on the contrary, the Notice recites the provisions of section 27–372 of the Code and, without differentiating between the categories of abandonment, contains space for the policeman to indicate the date by which the owner must move his vehicle. Although this court recognizes the strong governmental and public concern for the removal of abandoned vehicles from the public way, the ordinance and Police Department custom indicate that abandoned vehicles do not require prompt towing. Regardless of the category in which their presumptively abandoned automobiles may fall, owners are granted a reasonable period in which to remove their property before a towing order is instituted. Moreover, this is not a case in which "abandonment" is employed as a generic term to designate a broad spectrum of motor vehicle situations, some of which may require immediate removal of the automobile. On the contrary, the Police Department Vehicle Tow Report distinguishes between "abandoned tow[s]" on the one hand, and numerous vehicle categories for which an "immediate tow" may be authorized, on the other. Included in the latter is a "Hazard" classification, which consists of "motor vehicles obstructing traffic flow". Thus, an abandoned motor vehicle does not necessarily constitute a traffic impediment; if it did, the vehicle would not be classified as abandoned, but would be subject to immediate tow as a hazard.

This court is aware that the requirements of procedural due process may be loosened and even postponed in certain "emergency situations". Fuentes v. Shevin, *supra*, 407 U.S. at 90, 92 S.Ct. 1983. As the Supreme Court emphasized in *Fuentes*, however,

> "[t]hese situations, however, must be truly unusual. Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a governmental official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance." 407 U.S. at 90–91, 92 S.Ct. at 1999.

Under the laws challenged here, however, towing, without prior notice or hearing, is authorized in circumstances which do not demand prompt action, and no unusual situation is presented by the facts of this case.

Thus, due process requires that notice and an opportunity for a hearing be accorded to owners of abandoned vehicles prior to towing.[16]

These protections need be granted, however, only to those owners whose identity may be practicably ascertained. For this purpose, the crucial distinction is between those vehicles which have current license plates or registration decals and those which do not. Upon impoundment of a presumptively abandoned vehicle, the Chicago Police Department is under an obligation to request vehicle information from the Secretary of State. See Ill.Rev.Stat. ch. 95½, § 4–204; MCC § 27–425. Officer Nicholl testified that an owner may be identified through state motor vehicle registration records within 24 hours.[17] It is clear that this was the case with Graff's automobile. No attempt was made between November 10th and November 20th to trace the ownership of plaintiff's car through its license plates or city registration, but on November 22nd, within one day of the towing, the Automotive Pounds Section had determined that Graff was the owner and had sent him notification by registered mail.

There are circumstances in which the notice procedures outlined in the statute and ordinance, or followed by the police with regard to plaintiff's automobile, would be constitutionally sufficient. Vehicles which are in the requisite condition of disrepair or apparently deserted, and which do not carry proper licenses or registration are in this category. An owner who fails to maintain the identification data required by law,[18] and thus precludes a reasonably expeditious record search which might identify him, cannot persuasively complain when his automobile is towed without notice as an abandoned

vehicle. Such lack of diligence on an owner's part justifies postponement of notice until after towing, if notice is possible at all.

### The Notice Required

This case also presents serious constitutional questions as to the type of notice to be prescribed in abandonment situations. The defendants claim that the notice requirement is satisfied by the "Police Notice" placed upon the windshields of motor vehicles suspected of being abandoned. The prevailing standard regarding the constitutional adequacy of notice was restated in Mullane v. Central Hanover Bank & Trust Co., *supra*:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. . . . The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance . . . . But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. 'The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' . . .

"But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might

16. In light of the absence of a need for immediate action with respect to abandoned vehicles, the notice and opportunity may be given during or upon expiration of the waiting period.

17. Other information in the record indicates that it may take as long as 22 days to learn the owner's identity from the Secretary of

State's office. Nonetheless, it is undisputed that the name and address of a registered owner is readily available from motor vehicle registration authorities. See Menkarell v. Bureau of Narcotics, 463 F.2d 88, 94–95 (3d Cir. 1972).

18. See Ill.Rev.Stat. ch. 95½, §§ 3–833, 3–834.

reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." 339 U.S. at 314–315, 70 S.Ct. at 657, 94 L.Ed. 865 (citations omitted).[19]

Since vehicles which do not carry license plates or city registration decals do not reasonably permit additional notification to their owners, the indirect and occasionally futile notice accorded by the police sticker is constitutionally acceptable. See *id.* at 317, 70 S.Ct. 652.

However, the "Police Notice" is "substantially less likely to bring home notice [to those hereby required to receive it] than other of the feasible and customary substitutes." *Id.* at 315, 70 S.Ct. at 658.[20] "[W]here the names and post office addresses of those affected . . . are at hand, the reasons disappear for resort to means less likely than the mails to apprise them [of the pending action]," *id.* at 318, 70 S.Ct. at 659; further, "the mails today are recognized as an efficient and inexpensive means of communication." *Id.* at 319, 70 S.Ct. at 660. In light of the municipal and statutory mandates upon law enforcement officials to seek ownership information from the Secretary of State and to send notice by certified mail to the ascertained owner after impoundment,[21] a requirement that postal notification be sent prior to towing will not add any burden upon these authorities. This is not to suggest that the law enforcement agencies dispense with the present "Police Notice".[22] But where license plates or other registration is displayed on the vehicle, thus enabling identification of the owner, notice by such a device must be supplemented by the more dependable notice by registered or certified mail. In addition, "to convey the required information," *id.* at 314, 70 S.Ct. 652, the notice should also advise the recipient of the legal and factual basis for the presumption of abandonment.[23] See Goldberg v. Kelly, *supra,* 397 U.S. at 268, 90 S.Ct. 1011, 25 L.Ed.2d 287.

*The Hearing Requirement*

State and local governments have valid interests in the economic and expeditious resolution of questions involving the disposition of apparently abandoned motor vehicles. Nevertheless, where official action seriously interferes with property rights and the validity and reasonableness of that action may be open to question, and there is no need for immediate action, due process requires a prior hearing at which the vehicle owner may contest the planned action. The Supreme Court has emphatically rejected the argument that the cost, in time, effort, and expense, of holding a prior hearing constitutes a legitimate justification for ignoring this

19. The general principle that notice must be reasonably designed to inform the parties of action which may adversely affect their legally protected interests has been applied to condemnation proceedings, which are clearly analogous to the instant abandonment-towing statute and ordinance. See Schroeder v. City of New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962); Walker v. Hutchinson, 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956).

20. In addition to the risk that the notice may be removed by human or natural forces, the absence of any identification of the vehicle to which it applies further reduces the possibility for actual notification.

21. Ill.Rev.Stat. ch. 95½, § 4–204; MCC § 27–425. In addition, the ordinance prescribes a return receipt.

22. Since the absence in the "Police Notice" of any identification of the vehicle in question further reduces the possibility of actual notice, such information might be added.

23. At present, the form letter notice sent after impoundment does not state the reasons for towing or cite the statute or ordinance. Rather, it declares, in essence, that the vehicle is being held at the designated pound subject to certain charges and should be claimed within 15 days.

aspect of Fourteenth Amendment protections. See, *e. g.,* Fuentes v. Shevin, *supra,* 407 U.S. at 90–91 n. 22, 92 S.Ct. 1983, 32 L.Ed.2d 556. Bell v. Burson, *supra,* 402 U.S. at 540–541, 91 S.Ct. 1586, 29 L.Ed.2d 90; Goldberg v. Kelly, *supra,* 397 U.S. at 261, 90 S.Ct. 1011.[24]

In light of the phrasing of the ordinance, questions may, and in this case did, arise whether the vehicle subject to the tow was in fact (1) on a public way, (2) in a state of disrepair rendering it incapable of being driven, or (3) not used for seven consecutive days. In situations where a vehicle in the requisite state of disrepair is towed immediately, the hearing should be held before the owner is required to pay any charges.

▉▉▉▉ Although we hold that a hearing must be conducted before one's motor vehicle is towed as abandoned property, or after the impoundment if vehicles in a state of disrepair are towed immediately, we refrain from delineating the precise form such a hearing should assume. See Fuentes v. Shevin, *supra,* 407 U.S. at 96–97, 92 S.Ct. 1983; Bell v. Burson, *supra,* 402 U.S. at 542–543, 91 S.Ct. 1586; Snead v. Department of Social Services, 355 F.Supp. 764, 773 (S.D.N.Y.1973). The responsibility for choosing from the many available formats is more appropriately that of the governmental bodies involved.

These hearings must be characterized, however, by the "rudimentary due process" necessary to an accurate judgment on the validity of the abandonment presumption. Fuentes v. Shevin, *supra,* 407 U.S. at 97, 92 S.Ct. 1983; Bell v. Burson, *supra,* 402 U.S. at 542, 91 S.Ct. 1586; Goldberg v. Kelly, *supra,* 397 U.S. at 267, 90 S.Ct. 1011; Sniadach v. Family Finance Corp., *supra,* 395 U.S. at 343, 89 S.Ct. 1820, 23 L.Ed.2d 349 (Harlan, J., concurring); Snead v. Department of Social Services, *supra,* 355 F. Supp. at 773.

### The Fee Requirement

▉▉▉ The statute and ordinance also run afoul of the Constitution in their requirement that towing and storage charges be paid as a precondition to the release of an abandoned vehicle, regardless of whether the owner has been charged with the misdemeanor of abandonment,[25] or charged but acquitted. As demonstrated by this case, fees in excess of the maximum fine prescribed for a violation of the abandonment statute [26] may have to be paid without an opportunity, either judicial or administrative, to challenge the validity of the abandonment presumption. Such a scheme breaches fundamental fairness and further deprives vehicle owners of their property without due process of law.[27]

24. It cannot be contended seriously that the discretion of Officer Nicholl, as Commanding Officer of the Automotive Pounds Section, to adjust the towing and storage charges in appropriate situations constitutes a sufficient hearing. This is not the "meaningful opportunity to be heard [which is] firmly embedded in our due process jurisprudence." United States v. Kras, 409 U.S. 434, 441, 93 S.Ct. 631, 636, 34 L.Ed.2d 626 (1973). His authority to adjust finds no basis in the statute, ordinance, or police regulations; apparently, no guidelines exist for the exercise of this discretion. Finally, Officer Nicholl apparently cannot determine whether a vehicle has been legally impounded and that no charges are due, but rather has discretion only to determine the amount to be paid.

25. See note 2 *supra.*

26. At the time of the issuance of the temporary restraining order in this case, plaintiff

would have had to pay $152 for the release of his automobile. The maximum fine under the statute for abandoning a motor vehicle is $100. See Ill.Rev.Stat. ch. 95½, § 4–214.

27. Another court has held that a police chief's "practice of assessing towing and storage costs against individuals whose vehicles are impounded incident to arrests which do not result in the filing of criminal charges, or of allowing such assessments to be made by private companies which tow and store such impounded vehicles at the request of the [police department], denies equal protection of the laws to such individuals and deprives them of their property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States." Bell v. Tielsch, No. 65–72C2, (W.D.Wash., filed Aug. 23, 1972).

## EQUAL PROTECTION

The plaintiff also argues that the challenged statute and ordinance violate the Equal Protection Clause of the Fourteenth Amendment by requiring that all persons pay the $20 towing fee and accumulated storage charges as a precondition to release of their impounded vehicles. In support of this position, plaintiff notes that, in contrast to more affluent persons, who may be able to pay the charges, and, thus, regain their means of transportation, indigents may be deprived permanently of their property. "This contention takes us into a murky and uncertain area." LaPrease v. Raymours Furniture Co., 315 F.Supp. 716, 724 (N.D.N.Y.1970) (three-judge court). In light of the procedural modifications that will be instituted by virtue of our holding that the questioned provisions violate other constitutional safeguards, it "is neither necessary nor advisable for us to tread in this area." *Id.* at 724–725. The protections heretofore mandated will prevent a recurrence of the events which led to this litigation.

It is worth noting, however, that plaintiff's experience and the record demonstrate that impecunious persons are not foreclosed from reacquiring their motor vehicles by virtue of their inability to pay the towing fee and storage charges. In this case, Officer Nicholl offered to "adjust" the amount due when plaintiff claimed his automobile and informed the authorities that he was unable to pay the total figure then owing.[28] Under police practice, if the owner of an abandoned vehicle appears at the pound but is unable to pay the accrued charges, an "adjustment" may be authorized by the commanding officer of the pound or by his superiors in the department. This policy has resulted in the annual citywide release of hundreds of impounded and abandoned vehicles without prepayment of towing and storage charges.[29] Thus, alternative means of access exist; inability to prepay does not occasion an absolute denial of one's automobile.

## CONCLUSION

In conclusion, we hold that the provisions of the Illinois Vehicle Code and the Municipal Code of Chicago, which permit towing of "abandoned" motor vehicles displaying current license plates or city registration decals, without notice or an opportunity for a prior hearing on the abandonment issue, and which require payment of miscellaneous fees as a condition precedent to the release of such a vehicle without any hearing or adjudication of the abandonment issue, deprive individuals of their property without due process of law in violation of the Fourteenth Amendment of the U. S. Constitution.

Although we have no statistics upon which to rely, we hazard the forecast that this ruling will not greatly interfere with the efforts of the Chicago Police Department or of other law enforcement agencies in the state to keep the public ways clear of abandoned motor vehicles, as the vast majority of these vehicles will likely be those to which the protections of due process will not apply.

The foregoing opinion constitutes the court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

---

28. See note 9 *supra*.

29. Defendant Nicholl's answers to plaintiff's interrogatories establish that the following numbers of impounded vehicles were claimed by the owner and returned without prepayment of towing and storage charges for the years indicated:

| | |
|---|---|
| 1972 | 834 |
| 1971 | 841 |
| 1970 | 854 |

The following statistics represent the same figures for abandoned vehicles:

| | |
|---|---|
| 1972 | 201 |
| 1971 | 226 |
| 1970 | 168 |

For the reasons heretofore stated, it is

Ordered that judgment be granted herein:

(1) Declaring those provisions of the Illinois Vehicle Code and Municipal Code of Chicago which permit the towing and detention of "abandoned" motor vehicles, displaying current license plates and/or city registration decals, without any prior notice and an opportunity for a hearing unconstitutional as a violation of the Due Process Clause of the Fourteenth Amendment, and

(2) Enjoining and restraining the defendants, their agents, employees, and all other persons in active concert and participation with them, from implementing the statute or ordinance against motor vehicles with current license plates or city registration without according their owners, or those legally entitled to possession, prior notice and an opportunity for a hearing.