James SUTTON, Jr., Gloria Anderson, Juan Hernandez, Jeffrey Grygny, John Gavin and Margaretta Pickens, individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

CITY OF MILWAUKEE; Harold A. Breier, individually and in his official capacity as Chief of Police of the City of Milwaukee; Herbert A. Goetsch, individually and in his official capacity as Commissioner of Public Works of the City of Milwaukee; Harold F. Leatherby, individually and in his official capacity as head of the Central Board of Purchases for the City of Milwaukee; Wayne F. Whittow, individually and in his official capacity as City Treasurer for the City of Milwaukee; Menzl's Towing Service, Inc., a domestic Wisconsin corporation, and their agents, employees, successors in office, assistants, and all others acting in concert or cooperating with them or at their direction or under their control, Defendants.

Civ. A. No. 80-C-445.

United States District Court, E. D. Wisconsin.

Aug. 19, 1981.

Lawrence G. Albrecht and Mary M. Gundrum, Legal Action of Wis., Inc., Milwaukee, Wis., for plaintiffs.

I. B. Shapiro, Shapiro, Gorsky & Dubin, Milwaukee, Wis., for defendant Menzl's Towing Service, Inc.

Linda Uliss Burke, Asst. City Atty., Milwaukee, Wis., for remaining defendants.

## DECISION AND ORDER

TERENCE T. EVANS, District Judge.

In a decision dated March 9, 1981 I ordered the plaintiffs' motion for a preliminary injunction consolidated with a trial on the merits pursuant to Rule 65 of the Federal Rules of Civil Procedure. Subsequently, the plaintiffs moved for summary judgment. A plethora of affidavits, documents and written arguments have been submitted in support of and in opposition to the motion. Oral arguments were entertained on June 26, 1981.

The plaintiffs challenge the validity of various ordinances of the City of Milwaukee and statutes of the State of Wisconsin relating to the towing, storage and disposal of motor vehicles removed from the streets of the city. The original plaintiff in the action was James Sutton, Jr. Additional named plaintiffs Gloria Anderson, Juan Hernandez, Jeffrey Grygny, John Gavin and Margaretta Pickens were permitted to intervene in the action in a decision and order dated February 26, 1981.

In a decision dated December 10, 1980, I granted the plaintiffs' request for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. The order defined the class as:

> *Count I—Class*: All owners whose vehicles have been, are being, or will be seized, towed and stored under § 349.13(3) Wis.Stats. (1979) or Milwaukee Code of Ordinances § 101–25(1);
>
> *Subclass*: All indigent owners whose vehicles have been, are being, or will be seized thereunder and who advise defendants of their inability to pay all charges and fines claimed due;
>
> *Count II—Class*: All owners whose vehicles have been, are being, or will be declared abandoned, seized, towed, stored and disposed of under § 342.40 Wis.Stats. (1977) or Milwaukee Code of Ordinances §§ 105–65 and 101–25(3); and
>
> *Subclass*: All indigent owners whose vehicles have been, are being, or will be declared abandoned thereunder and who advise defendants of their inability to pay all charges and fines claimed due.

The first class and subclass are concerned with Section 349.13(3) Stats., which provides:

> "Whenever any traffic officer finds a vehicle standing upon a highway in violation of a prohibition, limitation or restriction on stopping, standing or parking imposed under ch. 346 or this section, the traffic officer is authorized to move the vehicle or to require the operator in charge thereof to move the vehicle to a position where parking is permitted or to

either private or public parking or storage premises. The removal may be performed by, or under the direction of, the traffic officer or may be contracted for by local authorities. Any charges for removal shall be regulated by local ordinance. The operator or owner of the vehicle removed shall pay the reasonable charges for moving or towing or any storage involved based upon the ordinance."

Chapter 346 states rules of the road regarding moving violations and parking restrictions. Chapter 349 grants power to local authorities to restrict the stopping, standing or parking of vehicles beyond chapter 346 restrictions. Section 349.13(3) also authorizes local authorities to assess reasonable charges for removal and storage against the owner or operator of seized vehicles.

Milwaukee Ordinance § 101–25(1), attacked by the first class and subclass, was enacted pursuant to § 349.13(3). It authorizes traffic officers to remove and store vehicles found to be in violation of any one of nine sections of the Milwaukee Code. Removal may be performed by the traffic officer or by a towing company under contract with the City. The ordinance sets the charges for removal and storage at $50, payable to the Police Chief who, upon payment, issues a receipt and authorization for release of the towed vehicle.

The state statute under attack by the second class and subclass is § 342.40, which provides for the identification of abandoned motor vehicles and proscribes procedures for their removal and disposal. A vehicle can be declared abandoned if it is left unattended "for such time and under such circumstances as to cause the vehicle to reasonably appear to have been abandoned." The statute's notice requirement informs the owner post-seizure that failure to redeem the vehicle by payment of all assessed charges is "deemed a waiver of all right, title, and interest in the vehicle and a consent to the sale of the vehicle." The statute also authorizes municipalities and counties to enact ordinances governing abandoned vehicles.

Milwaukee Code of Ordinances § 105–65 prohibits anyone from leaving a vehicle unattended on public or private property "under such circumstances as to cause such motor vehicle . . . reasonably to appear to have been abandoned." A vehicle so situated for more than 48 hours is deemed to have been abandoned.

Milwaukee Code of Ordinances § 101–25(3) provides that towed vehicles not claimed by the owner within 30 days shall be deemed abandoned. Accordingly, the City can declare vehicles abandoned which are towed and stored for any violations of § 101–25(1).

When a vehicle is declared abandoned under either § 101–25(3) or § 105.65, the Commissioner of Public Works is authorized by § 105–65 to impound it. A vehicle can be reclaimed upon payment of a "reasonable sum" for storage, towing and other expenses. If the vehicle is not reclaimed within 30 days after its initial storage, a notice must be sent to the Central Board of Purchases authorizing its sale. Personal notice of the time and place of the sale is not required to be given to the owner. After the sale, the City deducts expenses for the care and sale of the vehicle and credits the balance to the City Treasurer to be applied to the general City Fund.

Over 30 affidavits have been submitted by the plaintiffs in support of the motions presently before the court. Although the defendants have taken issue with some of the factual allegations, I believe the material facts that bear upon the facial constitutionality of the questioned statutes and ordinances and upon the actual practices employed in implementing the laws are not in significant dispute. Thus, the case is appropriate for resolution under Rule 56 of the Federal Rules of Civil Procedure.

Mr. Sutton alleges that on February 12, 1980, Milwaukee police ordered Menzl's Towing Service to seize, tow and store his 1972 Oldsmobile pursuant to Wis.Stats. § 349.13(3) and Milwaukee Ordinance § 101–25(1). On February 13, 1980, Sutton went to the Traffic Bureau and offered to pay the $50 towing and storage fee to ob-

tain the release of his car. According to Sutton, the police refused to release his auto until he paid two outstanding traffic commitments for $100 and $70, and agreed to sign a personal recognizance bond to appear in court on recent parking tickets. He told them that he was financially unable to pay the sum. Subsequently, a Traffic Bureau officer advised that before the car would be released, Sutton would also be required to post a $75 bond on a state charge of driving without a license. The total amount demanded before release was $295. Sutton questioned the validity of the state charge and the $70 commitment, but was told by Traffic Bureau officers that the car would only be released upon full payment.

Subsequently, Sutton received a letter, dated March 26, 1980, from the City's Central Board of Purchases. The letter declared his car abandoned pursuant to Wis. Stats. § 342.40 and Milwaukee Ordinances §§ 105–65 and 101–25(3), and said it would be sold. Sutton called the Central Board upon receipt of the letter. He stated that he had no intention of abandoning the car and that he had not reclaimed it because he did not have all of the money the Police Department was demanding. Sutton was told that additional storage charges were accruing at the rate of $2.00 per day.

Sutton ultimately obtained release of his car by paying $50.00 for towing and storage, and $100.00 for one commitment; additionally, he expunged the $70.00 commitment in Milwaukee Municipal Court, obtained a dismissal in State Circuit Court of the driving without a license charge. He did not pay any additional storage charges.

Due to the seizure and retention of his car, Sutton maintains that he suffered lost wages, additional transportation expenses, physical damage to his car, personal hardships and inconveniences. He claims compensable damages of $2,000. The other named plaintiffs make somewhat similar claims against the defendants. Additionally, the following class claims are raised:

1. That the seizure, towing and storage of vehicles under §§ 349.13(3) and 101–25(1) violates substantive and procedural due process under the Due Process Clause of the Fourteenth Amendment, and the Fourth Amendment to the U. S. Constitution;

2. That the seizure, towing and storage of vehicles under §§ 349.13(3) and 101–25(1) without prior notice and an opportunity for a hearing violates substantive and procedural due process under the Due Process Clause of the Fourteenth Amendment;

3. That the failure of §§ 349.13(3) and 101–25(1) to provide for a prompt post-deprivation notice and hearing to challenge the legality of the seizure, towing and retention of the vehicle and imposition of towing, storage and related charges violates procedural due process under the Fourteenth Amendment, and, in the case of indigent owners who advise of their inability to pay charges or fines, the Equal Protection Clause of the Fourteenth Amendment;

4. That class members whose vehicles have been towed under §§ 349.13(3) and 101–25(1) have also been damaged in the amount of $50 as a result of the imposition of towing and storage charges;

5. That the failure of §§ 342.40, 105–65 and 101–25(3) to require notice and a hearing prior to a declaration of abandonment of a vehicle violates procedural due process under the Fourteenth Amendment;

6. That the failure of §§ 342.40, 105–65 and 101–25(3) to provide for a prompt post-declaration of abandonment notice and hearing procedure to challenge the legality of the abandonment declaration and imposition of towing, storage, and related charges violates procedural due process under the Fourteenth Amendment;

7. That the failure of §§ 342.40, 105–65 and 101–25(3) to require release of a vehicle declared abandoned upon demand and without prepayment of any charges violates substantive and pro-

cedural due process under the Fourteenth Amendment and, in the case of indigent owners who advise of their inability to pay charges or fines, the Equal Protection Clause of the Fourteenth Amendment; and

8. That the failure of §§ 342.40, 105–65 and 101–25(3) to require personal notice to the owner of intent to sell a vehicle which includes information regarding the time, place, type of sale and right of the owner to purchase at the sale violates procedural due process under the Fourteenth Amendment.

The plaintiffs, in addition to a declaratory judgment and preliminary and permanent injunctions, seek compensatory damages for each class member whose vehicle has been towed pursuant to any enjoined provisions of §§ 349.13(3) and 101–25. Finally, plaintiffs seek attorneys' fees and costs under 42 U.S.C. § 1988.

The Milwaukee ordinances and Wisconsin statutes in question address similar concerns. The similarity of the enactments warrants joint consideration of their constitutional integrity. See *Graff v. Nicholl*, 370 F.Supp. 974, 980 (N.D.Ill.1974).

■ An automobile is a virtual necessity for most Americans. *Wooley v. Maynard*, 430 U.S. 705, 715, 97 S.Ct. 1428, 1435, 51 L.Ed.2d 752 (1977). Accordingly, automobile ownership is a property interest within the scope of the Due Process Clause of the Fourteenth Amendment. See *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). Any deprivation of that interest must be accomplished in conformity with the due process clause. *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1342 (9th Cir. 1977); *Remm v. Landrieu*, 418 F.Supp. 542, 545 (E.D.La.1978).

■ The requirements of due process are flexible and vary with the circumstances of each case. *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Certain requirements, however, rarely vary. As one court stated in a similar case,

"When such substantial private interests are affected by government action, procedural due process demands that notice and an opportunity for hearing 'appropriate to the nature of the case' be granted to the individual against whom the state acts. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 [70 S.Ct. 652, 656, 94 L.Ed. 865] . . . (1950). See *Grannis v. Ordean*, 234 U.S. 385, 394 [34 S.Ct. 779, 783, 58 L.Ed. 1363] . . . (1914). The notice and opportunity to be heard must be granted at a meaningful time and in a meaningful manner. *Armstrong v. Manzo*, 380 U.S. 545, 552 [85 S.Ct. 1187, 1191, 14 L.Ed.2d 62] . . . (1965). Furthermore, the opportunity for a hearing must be given *before* the deprivation takes effect, unless exceptional circumstances justify postponement of the hearing until after the event. See, e. g., *Fuentes v. Shevin, supra*, 407 U.S. at 81–82 [92 S.Ct. 1983, at 1994–1995, 32 L.Ed.2d 556] . . . ; *Boddie v. Connecticut*, 401 U.S. 371, 378–379 [91 S.Ct. 780, 786, 28 L.Ed.2d 113] . . . (1971); *Goldberg v. Kelly*, [397 U.S. 254, 263–264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970)]; *Sniadach v. Family Finance Corp.*, [395 U.S. 337, 342, 89 S.Ct. 1820, 1823, 23 L.Ed.2d 349 (1969)] (Harlan, J., concurring)."

*Graff, supra* at 981 (emphasis in original).

There are "exceptional circumstances" that justify seizure of automobiles without prior notice and hearings. See *Stypmann, supra* at 1343; *Hale v. Tyree*, 491 F.Supp. 622, 626 (E.D.Tenn.1979); and *Tedeschi v. Blackwood*, 410 F.Supp. 34, 44–45 (D.Conn.1976). The "circumstances" that qualify as "exceptional" generally exist only in emergencies. When the emergency is over, "the seizure is no longer necessary to secure an important governmental or public interest." *Remm, supra* at 545.

■ In analyzing the issue at hand, it must be noted that the City has a strong interest in collecting towing and storage fees, and in securing the payment of fines for unpaid parking tickets. It may not, however, deprive a person of his or her car

to insure payment. *Id.* See *United States v. Vertol,* 545 F.2d 648 (9th Cir. 1976) (seizure and retention of property to facilitate collection of a fine violates due process). Similarly, the "governmental interest in public safety and uncongested streets and highways cannot justify withholding a person's car, or assessing him for towing and storage charges, without any opportunity to determine the validity of either." *Craig v. Carson,* 449 F.Supp. 385, 394 (M.D.Fla.1978). Administrative convenience cannot justify the deprivation of property without due process.[1]

■ The City argues that because § 101–25(2) authorizes a refund of the charges if the citation that formed the basis for the tow is dismissed, the scheme is constitutional. I disagree. As stated in *Graff, supra* at 985, "the hearing should be held before the owner is required to pay any charges." See *Huemmer v. Mayor & City Council of Ocean City,* 632 F.2d 371, 372 (4th Cir. 1980); *Hale, supra* at 626 and *Hann v. Carson,* 462 F.Supp. 854 (M.D.Fla.1978).

The Ninth Circuit, in considering an ordinance similar to the law under attack here stated:

"Despite the greater relative weight of the private interests involved, the statute affords virtually no protection to the vehicle owner.

"The vehicle may be recovered only by paying the towing and storage fees; there is no provision for obtaining its release by posting bond. There is no provision that would mitigate the loss if the detention is unlawful or fraudulent. The statute establishes no procedure to assure reliability of the determination that the seizure and detention are justified. A police officer must authorize the tow, but he also 'gathers the facts upon which the charge of ineligibility rests,' and his judgment cannot be wholly neutral. *Goldberg v. Kelly,* [*supra,* 397 U.S. at 269, 90 S.Ct. at 1021]. Moreover, no official participates in any way in assessing the storage charges or enforcing the lien. No hearing is afforded and no judicial intervention is provided . . . at any stage before or after seizure unless and until the vehicle is sold to satisfy the lien. The only hearing available under any other state procedure may be long deferred, and the burden of proof is placed upon the owner of the property seized rather than upon those who have seized it.

" * * * Seizure of property without prior hearing has been sustained only where the owner is afforded prompt postseizure hearing at which the person seizing the property must at least make a showing of probable cause. Neither this nor any other procedural protection is afforded here that might prevent or

1. The City cites *Bricker v. Craven,* 391 F.Supp. 601 (D.Mass.1975), for its holding that the towing of an illegally parked automobile, which had a number of unpaid parking tickets, did not violate due process even though the owner received no pre-seizure notice or hearing. However, the *Bricker* plaintiff was from New Hampshire, and challenged the Boston parking ordinance on equal protection grounds because he was not given the same notice as Massachusetts residents. The Boston ordinance was upheld on grounds of administrative necessity not at issue in the present case: "Simply put, there are vast differences between cars registered in Massachusetts and those not so registered." *Id.* at 603. Similarly, in *Baker v. City of Iowa City,* 260 N.W.2d 427 (Iowa 1977), the Iowa Supreme Court upheld towing without prior notice only because the practice was limited to circumstances in which the identity of the car owner was unknown. To the extent that the due process analysis in *Bricker* or in the other state cases cited by the City, *Bane v. City of Boston,* —— Mass.App. ——, 396 N.E.2d 155 (1979); *Cohen v. City of New York,* 69 Misc.2d 189, 329 N.Y.S.2d 596 (Civ.Ct.1972); differs from that in this case, I find it unpersuasive as unsympathetic to federal due process requirements.

The City has also cited a number of hoary cases that validated the declaration of an illegally parked vehicle as a nuisance *per se,* and the subsequent towing of that vehicle, as a reasonable exercise of the police power. *Park v. Adams,* 289 S.W.2d 829 (Tex.Civ.Ct.App. 1956); *Hughes v. City of Phoenix,* 170 P.2d 297 (Ariz.1946); *Jackson v. Copelan,* 198 N.E. 596 (Ohio Ct.App.1935); *Steiner v. City of New Orleans,* 136 So. 596 (La.1931). I find these cases unpersuasive. They were decided well before the recent string of U.S. Supreme Court decisions that put an end to many practices once taken for granted. See *Fuentes, supra; Goldberg, supra; Sniadach, supra.*

ameliorate a temporary but substantial deprivation of the use and enjoyment of a towed private vehicle.

"An early hearing, on the other hand, would provide vehicle owners the opportunity to test the factual basis of the tow and thus protect them against erroneous deprivation of the use of their vehicles. The only state interest adversely affected by requiring an early hearing—avoidance of the administrative burden and expense—is not enough in these circumstances to warrant denying such a hearing. We conclude, therefore, that [the ordinance] does not comply with due process requirements." *Stypmann, supra* at 1343–44 (footnote citations omitted). *Accord, Huemmer, supra* at 372.

The statutes and ordinances under attack in this case suffer from the same deficiencies found by the Ninth Circuit in *Stypmann*. Section 349.13(3) of the Wisconsin Statutes and Milwaukee Ordinance 101–25(1) permit vehicles to be seized, towed and stored without a prior hearing being afforded to the owner when the vehicle is in effect standing in violation of any law. To the extent that these laws permit tows in non-emergency situations, they are unconstitutional. Simply put, these non-emergency tows are a governmental taking of private property without due process of law.

A vehicle may be towed without notice and an opportunity to be heard only when it is standing in such a manner as to jeopardize public safety and the efficient movement of traffic. Obviously, many of the tows permitted under the laws in question occur in non-emergency situations. For purposes of a general analysis, the nine permissible tow situations under Ordinance 101–25(1) can be divided into "emergency" and "non-emergency" situations as follows:

EMERGENCY

§ 101–24:    posted tow-away zones[2]

EMERGENCY

| | |
|---|---|
| § 101–24.2: | blocking traffic [*Opperman, supra*; *Stypmann, supra* at 1342 n.10; *Tedeschi, supra* at 43, 44] |
| § 101–26: | snow emergencies |
| § 101–24.1: | blocking a private driveway |

NON–EMERGENCY

| | |
|---|---|
| § 101–3: | adopts all traffic regulations in Wis.Stats. Chapter 346 for which penalty is forfeiture |
| § 101–22.5: | parking on service roads in recreational areas |
| § 101–23: | restricted parking (two-hour parking zones, loading zones, angle parking, etc.) |
| § 101–27: | overnight parking on the wrong side of the street or without a properly displayed permit |
| § 101–32: | overdue parking meters [*Seals v. Nicholl*, 378 F.Supp. 172, 177–178 (N.D.Ill.1973); *cf. Gillam v. Landrieu*, 455 F.Supp. 1030, 1037 (E.D.La.1978)] |

Even within the general categories, however, circumstances may, in a given case, cause a general non-emergency situation to become an emergency and vice versa. Accordingly, it is not possible here to say that every violation of a particular ordinance is either always an emergency that permits a tow without a prior hearing or always a non-emergency that makes such a tow constitutionally impermissible. The guiding principle must always be whether or not the vehicle, as it stands, jeopardizes public safety by either creating an unsafe condition or significantly hindering the efficient movement of traffic. The towing of parked vehicles that do not fall within these categories without a pre-tow notice and opportunity for a hearing violates the Fourteenth Amendment to the Constitution.

Although motive is not particularly germane to the issue at hand, a disturbing element is present here and deserving of comment. It appears that the unstated purpose of the laws, particularly the City Ordinance, is to "improve the collection of (prior) unpaid traffic law violation citations and traffic warrants ..." and to "improve

---

**2.** Assuming the zones properly identify areas where the efficient movement of traffic is impeded by the presence of a parked automobile.

collection of outstanding traffic law violation warrants from scofflaws ..." See November 8, 1979 letter from Milwaukee City Attorney to the Milwaukee Common Council and the City Clerk's fiscal note dated November 12, 1979, both attached as Exhibit 1 to plaintiffs' complaint. If this is the reason for enactment of the laws, they are a pretext for seizing, towing and holding vehicles ransom until prior parking or other traffic related warrants and commitments are paid. While attempting to collect unpaid traffic tickets may be laudable, the Constitution may not be scuttled, as it has been here, while pursuing the goal.

The next subject for consideration is the adequacy of the post-seizure rights afforded to those who have had their vehicles towed under the laws in question. I conclude that the post-seizure rights fail to meet constitutional standards.

I have previously noted the impermissibility of seizing and towing vehicles as a collection device. The primary, if not the exclusive, governmental interest in this area must be the immediate removal from city streets and alleyways of vehicles that impede the orderly flow of traffic and jeopardize public safety. Once a vehicle has been impounded, the City's interest is greatly reduced. After the tow, the vehicle owner must have a right to question whether the removal of his vehicle was proper. As stated earlier, the tow will only be proper if an emergency, as previously defined, existed.

To be meaningful, the right to challenge the basis for the tow must be afforded as quickly as possible. Lacking specific information upon which to base a precise time schedule, I hesitate to require that a hearing be offered within a proscribed number of days. I believe the better course to be to require the parties to attempt to negotiate a constitutionally workable plan.

In addition to the time requirements, the parties should have an opportunity to negotiate such items as the nature and form of the hearing, the identity of the person who should preside, and the rules to be followed.

Suffice to say that I believe due process in this area to require little more than an informal chance to be heard before a reasonably impartial person. The rules of evidence, the "right to confront witnesses" and other similar protections do not appear to be constitutionally required.

The plaintiffs also contend that indigent motor vehicle owners are denied equal protection of the law when they are denied the return of their towed automobile until various charges are paid. To a significant extent, this concern has been ameliorated by other parts of this decision.

First, I have determined that it violates the due process clause to tow a motor vehicle without a prior hearing in non-emergency situations. Because a prior hearing is administratively difficult to schedule, non-emergency tows will be greatly reduced. Limiting tows to true emergency situations will drastically reduce the number of autos taken into police custody. Accordingly, the pool of people affected by the police action is significantly reduced.

Secondly, I have determined that it violates the Constitution to condition return of a towed vehicle on payment of other outstanding charges. This practice, of holding a vehicle hostage, has in some instances necessitated that an owner pay a large sum of money to secure the release of his or her car. Putting the damper on this practice means that the sum of money required to be paid is a reasonable amount to pay for the tow. Presently, that amount is $50. Obviously, it is less onerous to require the payment of $50 than, as has been the fact in some cases, several hundreds of dollars.

The subclass certified on this point in my decision of December 10, 1980 defined the class as:

> "*Subclass*: All indigent owners whose vehicles have been, are being, or will be seized thereunder and who advise defendants of their inability to pay all charges and fines claimed due;"

As a result of other portions of this decision, the defendants will no longer be permitted to retain a towed vehicle until the

owner pays "all charges and fines claimed due." Thus, the subclass has been gutted. An "indigent" now is one who cannot pay approximately $50.00.

While automobile ownership does not necessarily preclude someone from being classified as indigent, I believe that the chances of establishing indigency status in situations involving auto ownership and payment of reasonable fees is remote. Vehicle registration fees, driver's license fees, insurance and financial responsibility bonds are regularly required of all. The cost to owners for regaining possession of their autos, the approximate equivalent of two tanks of gas, is so small that the potential pool of people who could legitimately claim an inability to pay is miniscule, if not nonexistent. For this reason I am persuaded that a more appropriate case in controversy should be presented to reach the indigency issue raised here. Accordingly, I find that the plaintiffs, on this record, have failed to demonstrate their entitlement to class relief on this issue.

The last issue is the plaintiffs' challenge to the abandonment scheme followed under Wisconsin Statute 342.40 and Milwaukee Ordinance 105.65. Also at issue is the declaration of abandonment of a towed vehicle not reclaimed within 30 days under Ordinance 101–25(3). The laws in question were summarized at pages 3 and 4 of this decision.

The plaintiffs have challenged the procedures on numerous grounds. Only those challenges I deem to have merit will be discussed.

A vehicle is presumed to be abandoned under the laws in question when it has remained unattended in the same place for more than 48 hours. Vehicles in this category could, depending on the circumstances, be standing in a manner that jeopardizes public safety and the efficient movement of traffic. However, most vehicles merely falling within the definition of a presumptively abandoned car would not constitute a hazard sufficient to permit their seizure and towing without prior notice and an opportunity to be heard.

Because the abandonment scheme called for in the laws in question permits, without prior notice or hearing, the seizing and towing of vehicles that do not constitute a hazard, they violate the due process clause of the Constitution. See *Graff, supra* at 982. Due process requires that notice and an opportunity for a hearing be accorded to owners of abandoned vehicles prior to towing.

These protections need be granted, however, only to those owners whose autos have a right to be on the public way and whose identity may be easily ascertained. For this purpose, the crucial distinction is between those vehicles which have valid registration plates and those which do not.

There are circumstances in which the notice procedures outlined in the statute and ordinance, or followed by the police with regard to an automobile would be constitutionally sufficient. Vehicles which are in the requisite condition of disrepair or apparently deserted, and which do not carry proper registration are in this category. An owner who fails to maintain the identification data required by law, and thus precludes a reasonably expeditious record search which might identify him, cannot persuasively complain when his automobile is towed without notice as an abandoned vehicle. Such lack of diligence on an owner's part justifies postponement of notice until after towing, if notice is possible at all. See *Graff, supra* at 983.

As in the portion of this decision that deals with emergency tows, I believe the formulating of a notice and hearing procedure in abandonment situations should first be the subject of negotiation between the parties before any action is taken by the court. The parties will, at the conclusion of this decision, be asked to come up with an appropriate plan. For guidance, they are directed to consider the discussion in *Graff.*

The post-abandonment tow scheme is also defective to the extent that it fails to provide a prompt opportunity for an owner to challenge the presumption of abandon-

ment or the governmental necessity of a tow prior to notice. Again, formulating a constitutionally acceptable scheme in this instance is left to the parties before the court takes action.

Lastly, I believe the same discussion regarding the indigent subclass in the first tow category is applicable here. See *Graff, supra* at 986. Thus, I reach the same conclusion.

Having determined that the challenged statutes and ordinances are, in varying degree, unconstitutional as written and as applied, the question of liability remains.

■ The City's liability is beyond dispute. A municipality has no immunity from liability under 42 U.S.C. § 1983 for its constitutional violations, and may not assert the good faith of its officers as a defense to such liability. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Because the City is liable for damages, I see no need to decide whether the individual City officials named as defendants here can assert an immunity based on their good faith in carrying out the statutes and ordinances. As far as Menzl's Towing Service is concerned, I am convinced that its role was limited to the act of towing, not the decision-making process, and that it is not liable in damages.

■ Menzl's and the individual City officials are subject to injunction. All acted "under color of state law," *see Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); and all are capable of future constitutional violations whether or not the towing statutes and ordinances are changed. Therefore, they may be enjoined despite my ruling as to their liability for damages. *See Stypmann, supra* at 1341–42; *Tedeschi, supra* at 41–43.

Therefore, IT IS ORDERED:

1. That Wis.Stats. §§ 342.40 and 349.-13(3) and City of Milwaukee Ordinances §§ 101–25(1), 101–25(3) and 101–65 are, to the extent discussed in this decision, unconstitutional on their face and as applied as depriving owners of motor vehicles of their property without due process of law.

2. To the extent that the questioned statutes and ordinances are unconstitutional, the defendants, their agents and employees, are enjoined from engaging in the practices and procedures found to be invalid.

3. That the parties meet and negotiate notice and hearing procedures as discussed herein and present their plans to the court within 30 days.

4. That the parties meet and negotiate a procedure by which individuals who have been improperly towed as discussed herein may recover the charges paid by them to regain possession of their automobiles. A report of their discussions in this regard should be submitted within 30 days.

5. That a conference with the court be held on October 5, 1981 at 9:30 a. m., to consider the submissions ordered under paragraphs 3 and 4 above.