**Thomas T. KNESS, Plaintiff,**

v.

**CITY OF KENOSHA, WISCONSIN, Mayor John D. Bilotti, City Attorney James Conway, Robert Jambois, James Mazak, and Kenosha Police Officer Wellman, Defendants.**

**Thomas T. KNESS, Plaintiff,**

v.

**"Bud" DeBOER and Bud's Towing, Defendants.**

**Thomas T. KNESS, Plaintiff,**

v.

**Al JANTZ, Jantz Auto Parts, Jantz Auto Sales, Inc., and Jantz Auto Salvage Co., Defendants.**

**Thomas T. KNESS, Plaintiff,**

v.

**ROMANO'S TOWING and Arcangelo Romano, Defendants.**

Nos. 85–C–635, 85–C–669, 85–C–670 and 85–C–671.

United States District Court, E.D. Wisconsin.

Sept. 25, 1987.

As Amended Oct. 26, 1987.

Thomas T. Kness, pro se.

James W. Conway, City Atty., Kenosha, Wis., for City of Kenosha, etc.

S. Michael Wolk, Weide, Hartley, Thom, Wilk & Guttormsen, Kenosha, Wis., for Romano's Towing & Arcangelo Romano.

Donald E. Mayew, Phillips, Richard, Lepp, Mayew & Kluka, Kenosha, Wis., for "Bud" DeBoer & Bud's Towing and Al Jantz, et al.

## DECISION AND ORDER

WARREN, Chief Judge.

Plaintiff Thomas T. Kness, pro se, filed the above lawsuits against the municipality, company and individuals that he felt were responsible for the alleged unlawful towing of automobiles parked on his property. Under 42 U.S.C. § 1983, he seeks return of the autos and their contents, an investigation of the involved towing companies by United States Marshals, and damages from various individual defendants ranging from $500,000 to $10,000.

Presently pending before the Court are (1) defendants' motions for summary judgment and (2) plaintiff's motion to amend his complaint in 85–C–635 to add the individual members of the Kenosha City Council. Based on the following decision, the Court grants in part and denies in part the motion for summary judgment in 85–C–635 and denies the motions in 85–C–669, 85–C–670, and 85–C–671. Furthermore, the Court denies plaintiff's motion to amend his complaint.

### I. Background

Mr. Kness and the City of Kenosha have developed a storied case history. Depending on perspective, the characterization could range from that of a principled crusader fighting municipal injustice to that of pain-in-the-neck eccentric badgering duly elected officials. At various times during the lawsuit, Mr. Kness has raised other allegations of official misconduct, including police intimidation and retaliation for the

filing of this lawsuit. However, neither a claim of unlawful retaliation nor an evaluation of the parties are properly before the Court. Mr. Kness' complaint deals solely with the towing of his cars.

The following facts are taken from a deposition of Kness, filed with the Court on May 1, 1986.

Kness, a teacher of radar electronics for the Navy, owns property at 8325 Sheridan Road in Kenosha, Wisconsin. The property is posted with "No Tresspassing" signs. At various times, he kept in open view on his property as many as eight cars, a truck and a motorcycle. At least four of the vehicles were not operable. One had no engine, two had defective engines, and one had a defective starter. None of the four had a current license or registration.

Kness received a letter from the City of Kenosha dated March 16, 1984. It read, in part:

DATE <u>March 16, 1984</u>
TO: PROPERTY OR VEHICLE OWN-
ER
RE: NUISANCE MOTOR VEHICLES—
REMOVAL
  Re: VEHICLE PARKED ON PROP-
  ERTY AT
  8325 Sheridan Rd.
  '72 Chev w/blue pickup IL '83 95351
  RV
  '74 VW Green Il '85 XCE721
  '70 VW orange IL '83 C0935
Dear Sir or Madam:
Section 7.126 of the Code of General Ordinances of the City of Kenosha, Wisconsin prohibits the storage on private property of "Nuisance Motor Vehicles". This shall include any inoperable, unlicensed, unroadworthy, disassembled or wrecked motor vehicle.
You are hereby notified pursuant to said section to abate the nuisance by removing the above listed vehicle from the premises or store the vehicle in a building authorized for such use within ten (10) days of the receipt of this notice. If, at the end of said ten (10) days, the nuisance has not been permanently abated, the owner shall then be in violation of this ordinance and be liable for a daily forfeiture, commencing the thirteenth (13) day following the date of notice sent by registered or certified mail.

Failure to comply with this notice shall be cause for the City of Kenosha, Wisconsin Police Department to have the vehicle moved to a proper vehicle storage lot by a City Police Department authorized towing firm.

The cost of removal by the City Police Department authorized towing firm and the storage charges shall be collected pursuant to Section 779.415 of the Wisconsin Statutes.

If you feel you are not in violation of the ordinance, please call Officer Wellman at the Kenosha Police Department, Telephone 656–7345, between the hours of 6:30 A.M. and 1:30 P.M.

    Very truly yours,
    KENOSHA POLICE
    DEPARTMENT
    JOSEPH H. TROTTA,
    CHIEF OF POLICE
    By:  _____
    CAREY PEARCY
    Deputy Chief of Patrol

Written in hand at the top of the letter was, "copy of unclaimed certified letter" and "tow on or after 4/18/84[,] 8:00 a.m."

On or around October 26, Kness received another letter from the City. It read, in part:

DATE <u>October 18, 1984</u>
TO: PROPERTY OR VEHICLE OWN-
ER
RE: NUISANCE MOTOR VEHICLES—
REMOVAL
  RE: VEHICLE PARKED ON PROP-
  ERTY AT
  *8325 Sheridan Rd.*
  VW Orange (bug) C0935 IL '83
  1102230007
  VW Brown (bug) DCR 127 NM '81
  118263436
  73 VW Lt.Blue (bug) LS8188'84 Vin.
  NA
  71 VW Green (but) [sic] JY9217 '85
  1112027723

DATE October 18, 1984

82 Kawasaki 550 cc Black 607628 '84 July JKAKZFC14CB 513518 (*see below*)

[listed on bottom of letter]

Ferrari Yellow LS7964 '85 Vin.NA

Bradley GT Brown Silver GCG950 IL'85 Vin.NA

72 Buick Blk/orange 2dr NR6959'84 4D37H2H4134907

Dear Sir or Madam:

Section 7.126 of the Code of General Ordinances of the City of Kenosha, Wisconsin, prohibits the storage on private property of "Nuisance Motor Vehicles". This shall include in inoperable, unlicensed, unroadworthy, disassembled or wrecked motor vehicle.

You are hereby notified pursuant to said section to abate the nuisance by removing the above listed vehicle from the premises or store the vehicle in a building authorized for such use within ten (10) days of the receipt of this notice. If, at the end of said ten (10) days, the nuisance has not been permanently abated, the owner shall then be in violation of this ordinance and be liable for a daily forfeiture, commencing the thirteenth (13) day following the date of notice sent by registered or certified mail.

Failure to comply with this notice shall be cause for the City of Kenosha, Wisconsin Police Department to have the vehicle moved to a proper vehicle storage lot by a City Police Department authorized towing firm.

The cost of removal by the City Police Department authorized towing firm and the storage charges shall be collected pursuant to Section 779.415 of the Wisconsin Statutes.

If you no longer own the vehicle(s) in violation, you may disregard this letter. You may pass this letter on to the new owner and inform them that they are in violation of State Statute 342.15(5) as well as the City Ordinance, 342.15(5), Failure of Owner to transfer Title.

Very truly yours,
KENOSHA POLICE DEPARTMENT
JOSEPH H. TROTTA,
CHIEF OF POLICE

By: CAREY PEARCY
Deputy Chief of Patrol

JHT:CP:fh

On November 18, 1984, five of Kness' cars were towed. Kness was at work at the time. The five were among those listed on the October 18 notice. Kness received no citations arising out of the City's Nuisance Motor Vehicle Ordinance.

Before the vehicles were towed, Kness had called the City Attorney's Office to ask for a pre-tow hearing, but was told that he was not entitled to one. Following the towing, he also was told that he was not entitled to a hearing.

After he learned the vehicles were towed, Kness was so shaken that he became sick and had to miss work.

Kness later learned that the vehicles were towed under the direction of Officer Dale C. Wellman of the Kenosha Police Department. The companies towing the cars were Jantz, Romano's and DeBoer's.

As far as specific wrong-doing on the part of individual defendants, Kness states:

1) the City Attorney, James Conway, is liable because he drafted the ordinance in issue and was legal counsel for the Common Council;

2) Assistant City Attorney Robert Jambois is liable because he failed to furnish Kness with a court date prior to the towing;

3) Assistant City Attorney James Mazak is liable because he did not provide Kness with a court date following the towing;

4) Officer Wellman is liable because he trespassed on Kness' property and enforced an ordinance that he should have known was unlawful;

5) the towing companies and their employees are liable because they trespassed to enforce an unlawful ordinance; also, they may be responsible for a missing jack and spare tire.

Kness further contends that he received a runaround from various defendants in his efforts to learn where his cars were,

how he could get them back, and whether he was entitled to a hearing on the matter. For example, he was told by the City Attorney's Office that he could not get an appointment with the office unless he was an attorney.

Kness filed the lawsuits May 1, 1985.

## II. Preliminary Matters

Plaintiff, in response to the summary judgment motions, claims that the City of Kenosha and other defendants in 85–C–635 did not answer "the last nine" paragraphs of his complaint. Plaintiff's complaint was submitted on a "Civil Rights Complaint[,] Pro Se Form." Part III of the form is titled "Statement of Claim." Defendants' Answer addresses the matters in "Paragraph III." Therefore, the Court finds no merit in plaintiff's contention.

Plaintiff further contends that the summary judgment motions were filed prematurely. At a hearing held February 7, 1986, the Court instructed the parties to complete discovery by April 4, 1986, and to file any dispositive motions by April 30, 1986. Defendant City of Kenosha filed its motion May 1, 1986. Thus, if anything, the motion was tardy. However, in the interest of justice and a speedy resolution of an already lengthy lawsuit, the Court declines to strike defendants' motion as untimely.

Defendant City of Kenosha moves to strike plaintiff's May 28, 1986, affidavit. The City contends, among other things, that the affidavit is not sworn to under oath, is untimely, contains allegations, opinions, conclusions and hearsay, and is not based solely upon the affiant's personal knowledge. The Court recognizes these defects, but notes that the relevant facts were also contained in the Kness deposition filed May 1, 1986. As such, the Court denies defendants' motion.

The Court now turns to the merits of the summary judgment motions.

## III. Motion of Kenosha Officials

The defendants in 85–C–635 move for summary judgment on the following bases: (1) there is no allegation of wrong-doing that would hold any of the individual defendants personally liable, except for Offi-cer Wellman; (2) Officer Wellman should not be held liable since he was simply exercising a good faith enforcement of a City Ordinance; (3) no constitutional violation existed since plaintiff was afforded due process; (4) plaintiff is not entitled to punitive damages; and (5) the elements of a § 1983 claim are not present.

### A. The Individual Defendants

Rule 56, Fed.R.Civ.P., provides that summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Company*, 778 F.2d 1278, 1281 (7th Cir. 1985). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact, *Egger v. Phillips*, 710 F.2d 292, 296 (7th Cir.), *cert. denied*, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983). The Court must review the entire record with all reasonable inferences drawn from it taken in a light most favorable to the non-moving party. *Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir.1987).

It is not explicit in the lawsuit as to whether Kness seeks to hold the named City officials personally liable. It would appear he does so since the complaint lays out specific "punitive damage" amounts to be extracted from each. The Supreme Court has instructed courts to liberally construe the pleadings of a pro se litigant. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652, *reh'g denied*, 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). As such, the Court interprets the naming of "City of Kenosha" as an attempt to hold the parties involved liable in their official capacity and interprets the naming of the individual defendants as an attempt to hold those listed personally liable.

The Court finds that under the provisions of 42 U.S.C. § 1983, Kness is unable to sustain a claim against the two Assistant City Attorneys, Robert Jambois and James Mazak.

The provisions of 42 U.S.C. § 1983 read as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The Seventh Circuit, in *Papapetropoulous v. Milwaukee Transport Services*, 795 F.2d 591 (1986), explained that the initial inquiry under § 1983 is whether two essential elements are present: (1) whether the conduct complained was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. 795 F.2d at 594–5. The Court went on to explain that a further element necessary for a properly plead cause of action is that a causal connection must exist between the defendant's actions and the injury resulting from the constitutional deprivation.

> "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation."

795 F.2d at 595, quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983).

The alleged constitutional deprivation in this case is the taking of Kness' vehicles without due process. The alleged wrongdoing on the part of the Assistant City Attorneys is that they failed to provide Kness with a hearing and, to one degree or another, gave him a bureacratic runaround.

The Court does not find the granting of a pre-tow hearing within the purview of an Assistant City Attorney. The duties of a City Attorney and his or her assistants are to conduct all the legal business in which the City is interested. Ch. 62.09 Wis.Stats. Nowhere in the Wisconsin Statutes is a City Attorney or Assistant City Attorney empowered to create judicial proceedings. The Court also finds that any runaround given Kness by the Assistant City Attorneys was too far removed from the towing of the vehicles to impose liability on the attorneys for any resulting damages. Therefore, the Court dismisses the individual claims against defendants Robert Jambois and James Majak.

The individual naming of Mayor Bilotti and City Attorney Conway raises the issue of immunity. Mayor Bilotti is allegedly liable because he presided over the council meeting that enacted the ordinance under which Kness' vehicles were towed; City Attorney Conway because he drafted the ordinance and played a part in giving Kness the alleged runaround.

It is clear that local officials are absolutely immune from damage suits based upon their legislative acts. *Reed v. Village of Shorewood*, 704 F.2d 943, 952–953 (7th Cir.1983). The absolute immunity includes "the introduction of, debate about, and voting on local legislation." *Heiar v. Crawford County*, 558 F.Supp. 1175, 1181 (W.D.Wis.1983). The Mayor's presiding over the council and the City Attorney's drafting of the ordinance are activities immune from suit under § 1983. Furthermore, as explained more fully above, the other alleged actions of the City Attorney are too far removed from the alleged damages incurred from the towing. Therefore, the individual claims against Mayor Billotti and City Attorney Conway are dismissed.

The sole individual remaining in 85–C–635 is Carl Wellman, the Kenosha police officer who ordered the towing of the vehicles. Police Officers are entitled to qualified immunity in a § 1983 action unless they knew or reasonably should have known that their actions violated a plaintiff's constitutional rights. *Silverman v. Ballantine*, 694 F.2d 1091, 1096 (7th Cir. 1982). Wellman has submitted an affidavit

wherein he states that he had no reason to believe that the ordinance in question was unconstitutional, illegal or unenforceable. Kness counters that the violation in this case was so blatant that to ignore the defect was evidence of malice.

■ The Court does not agree with plaintiff. As will be seen below, litigation over the towing of cars under various circumstances has by no means established a "red-flag" rule by which police officers can gauge their conduct. There is nothing else in the record that would establish that the towing of the vehicles was done with malicious intent on the part of Wellman. *See Harlow v. Fitzgerald,* 457 U.S. 800, 817–818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("... bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") Therefore, the Court dismisses the claim against him also.

### B. Due Process

The City contends that summary judgment is appropriate because Kness was afforded due process, or at least the opportunity for due process, with regard to the towing of his vehicles. Due process is at the center of Kness' claim. He contends that he was entitled to a hearing in a court of law before the towing of the vehicles.

There can be no question that due process is at stake here. In *Sutton v. City of Milwaukee,* 672 F.2d 644, 645 (7th Cir. 1982), the Court stated that a person's car is property and, consequently, the state may not deprive him of it without due process of law. The Court also said that the deprivation need not be permanent to be actionable. *Id.*

The City does not contest this point, but instead argues that due process was provided by Chapter 68 of the Wisconsin Statutes, which is titled, Municipal Administra-

tive Procedure. That Chapter provides various review procedures for persons aggrieved by municipal authorities. Review by a court of law is one of the final steps. The City adds that this Court should not address the constitutionality of Chapter 68 without first notifying the state Attorney General.

The Court does not agree that the mere existence of Chapter 68 solves the issues at hand. Section 68.001 reads,

> The purpose of this chapter is to afford a constitutionally sufficient, fair and orderly administrative procedure and review in connection with determinations by municipal authorities which involve constitutionally protected rights of specific persons which are entitled to due process protection under the 14th amendment to the U.S. constitution.

While the chapter may provide sufficient due process for many determinations of municipal authorities, it is inconceivable that the provisions could provide the proper due process for every action undertaken by a municipal authority. " 'Due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

■ The first issue for the Court is whether due process requires the City to provide a notice and hearing before the towing of Kness' vehicles. The second issue is, assuming a pre-tow hearing is required, whether the provisions of Chapter 68 alone satisfy the due process requirements. As the Seventh Circuit said in *Sutton,* the "starting point" for this analysis is *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), and the three-prong cost-benefit test. 672 F.2d at 645. The test requires comparing the benefit of the procedural safeguard sought with the cost of the safeguard. *Id.* The benefit side is the "multiplication" of the two

factors: (1) the value of the property interest times (2) the probability of erroneous deprivations of the value if the safeguard is not provided. *Id.*

Quantification will rarely be possible but expressing mathmatically the relationships between the value of the interest and the probability of its erroneous destruction may assist in thinking about the tests—which, being general, are as applicable to the towing of automobiles as to the termination or reduction of social security benefits as in *Mathews* and *Frost* [*v. Weinberger*, 515 F.2d 57, 66 (2d Cir.1975).]

672 F.2d at 645–46.

The value of the benefit at stake is questionable. Vehicles towed under the ordinance must be "inoperable, unlicensed, unroadworthy, disassembled or wrecked"—in other words, a nuisance.[1] The vehicles are

---

1. At all times relevant to this suit, Section 7.126, in its entirety, reads as follows:

"7.126 Motor Vehicles—Nuisances—Repair Work.

A. Purpose. The purpose of this ordinance is to prevent blight, to secure healthy and humane living conditions, to protect the integrity of investments in real property, to prevent the decline of real estate values, to improve aesthetics and to protect the public health, safety and welfare. In order to secure this goal, activities countrary to this ordinance are deemed to constitute a matter of public concern which must be regulated or proscribed through the exercise of the City's police powers.

B. Definitions.

(1) "Motor Vehicle(s)" shall include mobile home, moped, motor bicycle, motor bus, motorcycle, motor-driven cycle, motor home, motor truck and motor vehicle as defined in Chapter 340, Wisconsin Statutes.

(2) "Nuisance Motor Vehicle(s)" shall include any inoperable, unlicensed, unroadworthy, disassembled or wrecked motor vehicle. A vehicle for which a license has been applied for shall be herein deemed a licensed vehicle if proof of application is prominently displayed on the front wind-shield.

(3) "Repair Work" shall include mechanical, electrical and body work, maintenance, construction, reconstruction, assembly, disassembly, restoration, painting, upholstering or any similar or related work performed on any motor vehicle.

(4) "Street Repairs" shall mean "temporary repair work" performed on a motor vehicle in a manner and place which will not create a danger or hazard to vehicular or pedestrian traffic.

(5) "Temporary Repair Work" shall mean repair work which is performed within twenty-four (24) hours of a motor vehicle becoming unexpectedly unroadworthy on a street, highway or thoroughfare, which work will make or attempts to make said motor vehicle roadworthy.

C. Prohibition. It shall be unlawful for any person, party, firm or corporation to keep, place or store any "nuisance motor vehicle" or to perform "repair work" or "street repairs" upon any public thoroughfare, street or highway or upon any private or public property within the City in a manner inconsistent with this Ordinance.

D. Repair Work—Limitations. "Repair work" may be performed upon observance of the following conditions and restrictions:

(1) "Repair work" upon residentially zoned private property cannot be performed for financial gain or profit obtained through fees, barter, charges or appreciation in the value of a motor vehicle purchased for the purpose of resale. "Repair work" upon other than residentially zoned property shall be in accordance with the City zoning ordinances and in compliance with applicable State and City laws, rules and regulations, licenses and permits.

(2) Except for authorized street repairs, "repair work" which renders a motor vehicle inoperable for a period of more than three (3) working days, must be performed in a garage or enclosed structure or fenced in area which screens repair work from the view of the owners, users and occupiers of abutting and neighboring properties and from the view of passersby using public thoroughfares, streets and highways.

(3) "Street repairs" may be performed only within the scope of the definition thereof.

E. Nuisance Motor Vehicles—Limitations. "Nuisance motor vehicles" may be kept, placed or stored outside of a garage or enclosed structure only in conjunction with a duly authorized and licensed auto sales, repair or salvage business lawfully operating within a properly zoned area and in compliance with all State and local laws, rules, regulations, licenses and permits.

F. Nuisance Motor Vehicles—Removal. Subject to the procedures herein set forth, nuisance motor vehicles may be removed to a storage lot by the Police Department at the cost and expense of the owner thereof through an authorized Police Department tow and may be disposed of by the tower, if unclaimed, through procedures provided for in State and local law. Owners of nuisance motor vehicles shall be provided with a ten (10) day written notice by the Police Department, served personally or by registered or certified mail, stating that they must abate the nuisance therein specified within ten (10) days or in the alternative the vehicle will be moved to a proper vehicle storage lot by the City Police

not immediately useable, thus they are less than the "slight" property interest noted in *Sutton* with respect to illegally parked cars. 672 F.2d at 646. Beyond the monetary value of the vehicles, however, are the costs associated with remedying a deprivation. Inoperable vehicles require towing for a return trip as well. There also is the cost of towing and charges for storing, which according to the ordinance, the owner must incur. Further weighing in on the benefit side is the "cost" to the owner of the property on which the vehicles are stored of having City officials come on the property and remove the vehicles. This person may or may not be the same as the owner of the vehicles. Therefore, while the actual vehicles may be of little value, the costs involved in their removal may increase their "value" to the owner.

The probability of error in cases such as these appears slim. Whether a vehicle is "inoperable, unlicensed, unroadworthy, disassembled or wrecked" would seem, like the illegally parked cars in *Sutton*, a "pretty cut and dried" determination. If a vehicle is without an engine or tires or other essential parts, an evaluation that it is inoperable is certainly more objective than subjective. Mistakes on the part of police officers, though possible, are likely to be few and far between.

On the other side of the ledger is the cost of the safeguard. Unlike the facts in *Sutton*, requiring a pre-trial hearing would not prevent all towing of nuisance vehicles. It would simply delay the result. Although the state has an interest in abating a nuisance, it is not an "emergency" situation such as with illegally parked vehicles, *Sutton*, or with recently recovered stolen vehicles, *Miller v. City of Chicago*, 774 F.2d 188 (7th Cir.1985). Furthermore, it is obvious that the City will at one stage or another have to justify its action. A pre-tow hearing would force the City to do so before the expense of towing is incurred—an expense that eventually has to be incurred by either the vehicle's owners or the taxpayers.

A balancing of the factors provides a close case. The value of the vehicles is little and the chance of error slight. On the other hand, the cost of providing a pre-trial opportunity to be heard also is minor. But as the Seventh Circuit said in *Miller*, "pre-deprivation notice and hearing represent the norm and the state must forward important reasons to justify a departure therefrom." 774 F.2d at 191. The Court has not found in the record any "important reasons." It therefore concludes that the City must provide an opportunity for hearing before towing any vehicles from private property pursuant to Section 7.126.

■ The next issue, then, is what type of hearing is necessary. As the Supreme Court explained in *Mathews v. Eldridge*, a "judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances." 424 U.S. at 348, 96 S.Ct. at 909. The question, however, is essentially moot. Chapter 68 provides for no pre-deprivation hearing of any kind, unless one is considered "aggrieved" at the time of re-

Department authorized to tow and the vehicle owner will be responsible for the payment of the cost of removal plus storage charges, and will be subject to a forfeiture as herein provided for. The ten (10) days herein provided for shall continue to run even if the vehicle is temporarily moved for a period of time where no action is taken to permanently abate the specified nuisance. If at the end of said ten (10) days the nuisance has not been permanently abated, the owner shall be in violation of this ordinance and be liable for a daily forfeiture commencing with the eleventh (11th) day following the date of notice by personal service or the thirteenth (13th) day following the date of notice sent by registered or certified mail. Unlicensed vehicles, except

vehicles for which a license has been applied for and a record of application conspicuously displayed on the front windshield, which are upon public thoroughfares, rights-or-way, streets and highways may be removed without advance notice. However, within twenty-four (24) hours of the tow of an unlicensed vehicle, there shall be an attempt made by the Police Department to determine the name of the owner and to serve the owner with a notice as to the location of the vehicle and as of appropriate claim procedures which will permit the owner to recover the vehicle.

Section Two: This Ordinance shall become effective sixty (60) days after passage and publication.

The ordinance has since been amended.

ceiving notice. Even then, neither the ordinance in question nor the notice of violation provides for a staying of the 10–day period given for abatement of the nuisance prior to towing. The initial review stage of Chapter 68 requires a review within 15 days of notice. Obviously even that first step may come too late to provide a person the opportunity to be heard before the vehicles are towed.

Section 7.126 of the Code of General Ordinances, even in conjunction with Chapter 68, Wis.Stats., does not provide any opportunity for a hearing prior to the towing of nuisance vehicles from private property. Therefore, the ordinance violates due process. The City's motion for summary judgment on this point is denied.

### C. Elements of a § 1983 Claim

■ The City next contends that Kness cannot show any actual injury. It contends (1) the undisputed record shows the vehicles in question were nuisances and would have been subject to tow even if a hearing had been held and (2) any actual damage to Kness came from his own failure to comply with the nuisance ordinance.

The Court is not convinced that, on the basis of the record before it, Kness has not made a § 1983 case or would not be entitled to damages. The vehicles were towed pursuant to an invalid ordinance. Speculation on whether a hearing would have prevented that towing is, at this stage, just that: speculation. Kness may have asked for, and been granted, a stay in order to fix the vehicles. Furthermore, at oral argument, the parties were not sure of the present location of the vehicles or whether they still exist. Thus, the damages of Kness may have gone beyond a mere towing charge for refusal to comply with a city ordinance. Therefore, the Court declines to grant summary judgment on these points.

### D. Punitive Damages

■ Finally, the City contends that Kness is not entitled to punitive damages since there is nothing in the record to show aggravating circumstances or malicious intent.

The standard for the awarding of punitive damages in a § 1983 suit was laid out by the Seventh Circuit in *Merritt v. De Los Santos*, 721 F.2d 598, 601 (1983):

Punitive damages are recoverable in a § 1983 suit in an appropriate case. *See Carey v. Piphus*, 435 U.S. 247, 257 n. 11, 98 S.Ct. 1042, 1049 n. 11, 55 L.Ed.2d 252 (1978). The standard for determining whether it is appropriate to award punitive damages has been described in various ways. In a recent Supreme Court decision it was decided that punitive damages may be assessed "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). This court has required a "showing of aggravating circumstances or malicious intent" to justify the award of punitive damages. *Endicott v. Huddleston*, 644 F.2d 1208 (7th Cir.1980); *Konczak v. Tyrrell*, 603 F.2d 13 (7th Cir.1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980). Punitive damages may be awarded for the purpose of deterring or punishing constitutional violations. *See Endicott v. Huddleston*, 644 F.2d at 1217; *see also Smith v. Wade*, 103 S.Ct. at 1636. In addition, the Supreme Court recently rejected the argument that "the deterrent purposes of punitive damages are served only if the threshold for punitive damages is higher in every case than the underlying standard for liability in the first instance." *Id.*, 103 S.Ct. at 1638.

The decision to award punitive damages is within the discretion of the trier of fact. *Id.* However, a plaintiff must create a material issue of fact in order to survive a summary judgment motion and get the issue to the trier of fact. In the case at hand, Kness presents nothing more than mere allegations of malicious intent or aggravating circumstances. As stated above, there is nothing in the record to support an inference of intentional wrong-doing on the part of any other City official involved in the enactment or enforcement of the ordi-

nance. Further, when faced with the defendants' motion for summary judgment plaintiff took no steps to buttress the record with evidence of malice. Therefore, the Court grants summary judgment to the City on the issue of punitive damages.

## IV. Motions of Towing Firms

■ The defendant towing firms and their owners in 85–C–669, 85–C–670 and 85–C–671 move for summary judgment, arguing that Kness has not stated a claim upon which relief can be granted. They cite section 349.13(5)(a), Wis.Stats.[2], which in essence provides limited immunity to towers acting under direction of law enforcement officers. In his complaint, Kness alleged that the towers should have known the ordinance was unconstitutional and that they failed to comply with certain Wisconsin requirements with regard to towed vehicles.

As explained in *Papapetropoulous* and above, the essential elements of a § 1983 claim are:

   1) the conduct complained of was committed by a person acting under color of state law;

   2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States; and

   3) a causal connection exists between the defendant's actions and the injury resulting from the Constitutional deprivation.

There is no dispute at this time that the towers were acting under color of state law or that their action deprived Kness of his vehicles. The sole issue before the Court is whether a § 1983 cause of action can be barred by Wisconsin law.

The answer is no. While the statute may be effective against a state tort claim, it has no force when applied to a federal civil rights claim. *See Wade v. City of Pittsburgh*, 765 F.2d 405, 407 (3rd Cir.1985). (supremacy clause of Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law.)

Since the towers did not raise the issue of federal immunity, the Court makes no ruling at this time on whether they are entitled to qualified immunity in their capacity as agents of the City police department acting under the express direction of a police officer.

## V. Motion to Add Council Members

■ Kness moves to add the individual members of the City council. The motion is opposed on the grounds that the council members enjoy absolute immunity.

Leave to amend a pleading under Rule 15(a), Fed.R.Civ.P., is freely given in the absence of any apparent or declared reason, such as undue delay, bad faith, dilatory motive on the movant's part, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to opposing parties by virtue of allowance of amendments or futility of the proposed amendment itself. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Hess v. Gray*, 85 F.R.D. 15, 20 (N.D.Ill.,1979), However, the liberality of amendment envisoned under the Rule is not a mechanical absolute. A motion for leave to amend may be denied where the proposed amendment would be subject to a valid motion to dismiss. *Freeman v. Continental Gin Company*, 381 F.2d 459, 468 (5th Cir.1967); *Wilson v. Dupont*, 30 F.R. D. 37, 40 (E.D.Pa.1962).

As explained above, individual legislators enjoy absolute immunity in the enactment of an ordinance. The proposed amendment would be subject to a valid summary judgment motion. Therefore, the motion to amend is denied.

## VI. Summary

Accordingly, the Court hereby:

1) GRANTS the motion for summary judgment dismissing the claims against individual defendants Billotti, Conway, Jambois, Mazak and Wellman;

---

**2.** Section 349.13(5)(a) reads, in part:

   No person, who removes or stores a vehicle ... at the request of a law enforcement officer, may incur any civil liability for the act,

except for civil liability for failure to exercise reasonable care in the performance of the act or for conduct that is wilful, wanton of malicious.

2) DENIES the motion for summary judgment dismissing the claims against the City and the towing firms and their owners;

3) GRANTS the City's motion for summary judgment on the issue of punitive damages; and

4) DENIES the motion to amend the complaint to add the individual City Council members.

The Court recognizes that there are other unresolved disputes, including one over the answering of plaintiff's interrogatories. The Court also recognizes that, on the basis of this decision, the parties will realize that some of those disputes are now irrelevant. Accordingly, the Court will hold a status conference on *Wednesday, October 21, 1987 at 9:30 a.m.* in Courtroom 390 of the Federal Building, 517 E. Wisconsin Avenue, Milwaukee, Wisconsin. At such time, the parties should be prepared to explain the exact issues still in dispute and whether further discovery is necessary to the resolution of those issues.