Lucinda PETTY, Plaintiff,

v.

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WYANDOTTE, KANSAS, et al., Defendants.**

No. 96–2027–JWL.

United States District Court,
D. Kansas.

March 10, 1997.

Mark A. Rohrbaugh, Michael R. Lawless, Overland Park, KS, for Lucinda Petty.

Tessa K. Jacob, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, James D. Conkright, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, Jack L. Fortini, Fortini & Magruder, Kansas City, MO, Matthew W. Tills, White & Steele, Denver, CO, for Board of County Com'rs of the County of Wyandotte, Michael S. Dailey, John Doe, Jane Doe.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for Muncie Auto Salvage, Inc.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This case comes before the court on the defendants' motions (Doc.s # 51 and # 52) [1] for summary judgment and the plaintiff's motion (Doc # 55) for partial summary judgment on the issue of the defendants' liability. The main issue presented is whether the defendants violated the plaintiff's Fourth and Fourteenth Amendment rights when they towed and sold her vehicle. For the reasons discussed below, the court grants the defendants' motions and denies the plaintiff's motion.

### I. Facts. [2]

On February 25, 1993, the plaintiff and George Petty were divorced in Wyandotte County District Court. Pursuant to their divorce decree, the plaintiff was awarded a 1983 Chevrolet Chevette ("Car") "free and clear of any right, title or interest" held by George Petty. Although the Car remained in her possession during the relevant time period, the plaintiff failed to take the necessary steps to transfer the Car's certificate of title from George Petty's name to her name. Thus, at various times after her divorce, the plaintiff illegally operated the Car on the streets and highways of Kansas and Wyandotte County, Kansas.

In January of 1995, the plaintiff was residing at Park Victoria, an apartment complex located at 2311 Victoria Drive, Kansas City, Kansas ("Complex"). In January of 1995, the manager of the Complex, Ms. Kathy Perkins, sent a letter to the Wyandotte County Sheriff's Department complaining about cars without license tags or registration parked in the Complex's parking lot. On January 19, 1995, Ms. Perkins sent a letter to the Wyandotte County Sheriff's Department giving it permission to enter onto the Complex's premises for the purpose of car tag enforcement.

On January 24, 1995, Deputy Wyandotte County Sheriff Robert Morris went to the Complex to investigate whether any of the cars parked in the Complex's parking lot displayed expired tags, stolen tags, improper tags, or no tags at all. [3] During his investigation, Deputy Morris noticed a 1983 Chevrolet Chevette with no license tags, two flat tires, and damage to its windshield and rear. [4] A check of the Car's vehicle identification number (VIN) revealed that the Kansas Motor Vehicle Department (KMVD) had no record of the Car. Because the Car was not properly registered with the KMVD nor displaying a valid tag, Deputy Morris requested that De-

---

1. Defendant Muncie Auto Salvage, Inc. filed a separate motion for summary judgment (Doc. # 51). Defendants Board of County Commissioners of the County of Wyandotte, Kansas, Michael S. Daily, John Doe, and Jane Doe (Government Defendants) filed a joint motion for summary judgment (Doc. # 52).

2. The parties have stipulated to these facts for summary judgment purposes (Doc. # 48).

3. The Wyandotte County Sheriff Towing Guidelines for Tag Enforcement Unit provides that certain motor vehicles may be impounded for any of the following reasons: "(1) displaying no state license plate and having no current regis-

tration; (2) expired, switched and altered license plate or 30 day permit; (3) no current liability insurance at all; and (4) driver arrested for active warrant(s) or driver's license violation (suspended)." It further provides that a tow hearing will be set within 48 hours; the tow hearing officer is the Undersheriff; the tow hearing dates are Tuesday and Thursday of each week, the time set by the Undersheriff; and if a decision is not accepted by the owner, the tow hearing will be forwarded to a district court judge for the final decision.

4. Deputy Morris identified several cars parked on the Complex's premises with expired tags, stolen tags, or no tags at all.

fendant Muncie Auto Salvage, Inc. (Muncie) tow the Car based on his conclusion that the Car fell within one or more of the categories stated in Wyandotte County Sheriff's Towing Guidelines.[5] Muncie removed the Car as requested. Deputy Morris prepared a tow report indicating that the Car should be held for proof of ownership, registration, and insurance. His report also indicated that the owner of the Car was unknown. The Wyandotte County Sheriff's Department did not send out a notice of the impoundment because the registered owner of the Car was unknown and because it was unknown whether the Car had ever been registered in Kansas.[6]

Upon realizing that her Car had been impounded, the plaintiff went to the Wyandotte County Sheriff's office to facilitate its return. The plaintiff met with Undersheriff Leroy Green and produced the Car's expired registration, which indicated that George Petty was the last registered owner. Undersheriff Green informed the plaintiff that she needed to provide proof of current title and registration in her name as well as proof of insurance before the Car could be released to her. The plaintiff never provided such proof.

On February 7, 1995, Muncie mailed a "15 Day Notice to Vehicle Owner" to George Petty at 2311 Victoria Drive, Kansas City, Kansas and to Greyhound Credit Union in Kansas City Missouri, the Car's last registered owner and lienholder. This notice stated, among other things, that the vehicle had

been impounded as of January 24, 1995, and that a possessory lien would be placed on the Car if the impoundment charges remained unpaid. On February 20, 1995, Muncie filled out a Verification Request with the Kansas Department of Revenue, Division of Vehicles to verify the Car's title. On February 27, 1995, a Vehicle Title and Owner Lien Inquiry was issued by the State of Kansas indicating that the Car's owner was George B. Petty, residing at 2311 Victoria Drive, Kansas City, Kansas. The Verification also indicated that Greyhound Central Credit Union in Kansas City, Missouri was a lienholder on the Car. On March 7, 1995, Muncie sent notice by certified mail to George B. Petty and to Greyhound Central Credit Union that the Car would be sold at an auction on March 22, 1995, if the Car was not reclaimed and the accrued impoundment fees paid before then. On 3/3, 3/10, and 3/17 of 1995, Muncie published notice of the March 22, 1995, auction in the Kansas City Kansan. On March 22, 1995, the Car was released to the public auction.

On January 12, 1996, the plaintiff filed this civil rights action under 42 U.S.C. § 1983. The plaintiff alleges that the defendants violated her rights as protected under the Fourth and Fourteenth Amendments of the United States Constitution.[7] Specifically, the plaintiff contends that the defendants violated her Fourth and Fourteenth Amendment rights when they towed her Car without providing her "... notice or any type of

---

5. The Wyandotte County Sheriff's office did not notify or attempt to notify the owner of the Car prior to its removal.

6. Although not part of the parties' stipulated facts, the plaintiff discusses a Kansas City, Kansas Police Department Offense Report dated January 25, 1995. The report, which was filed by Mr. George Petty living at 2311 Victoria Drive, states that an "[u]nknown suspect stole the license tag off of the victim's personal vehicle, and punctured all four tires on the victim's personal vehicle.

The Government Defendants note that the plaintiff did not produce this report before the parties finalized their stipulations of fact. The Government Defendants argue that this report does not pertain to the Car because the report does not identify the make, the model, or year of the car involved; because the report indicates

that Mr. George Petty reported the theft of the license plates off the car he owned, not the Car purportedly owned by the plaintiff; and because the theft occurred the day *after* the Car was towed. The Government Defendants further argue that even if this report does pertain to the Car, it does not alter the fact that the plaintiff illegally operated the Car in Wyandotte County for nearly two years.

7. The plaintiff also previously alleged that the defendants' conduct constituted civil conversion. *Complaint*, at 5. Because the parties jointly requested to postpone this case's Final Pretrial Conference and submit this case to the court on cross motions for summary judgment (Doc. # 50), the court assumes that all issues, claims, and defenses not addressed in their papers are waived. Therefore, because neither party discusses the plaintiff's civil conversion claim, the court deems it waived.

opportunity, either pre or post seizure, to be heard," *Complaint,* at 5, and when they seized her Car ". . . without a warrant in the absence of exigent circumstances or need to protect public safety." *Id.*

## II. Summary judgment standard.

When considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir.1995). A moving party who bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The non-movant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed.R.Civ.P. 1." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

## III. Discussion.[8]

■ A civil rights plaintiff proceeding under § 1983 must allege and prove that some person deprived him or her of a federally protected right and the person who has de-

prived him or her of that right acted under color of state law. *Cox v. Rap–A–Lot Records,* No. 95–2236, 1996 WL 227233 at *1 (10th Cir., May 06, 1996) (citing *Houston v. Reich,* 932 F.2d 883, 890 (10th Cir.1991)). In this case, the plaintiff contends that the defendants, while acting under color of state law, violated her Fourth and Fourteenth Amendment rights. Specifically, the plaintiff argues (1) that no city, state, or federal statute requires automobiles to display a license plate, have insurance, or be operational while parked on private property; (2) that because the plaintiff's lease permitted her to park her Car in the Complex's parking lot, the plaintiff's landlord had no authority to authorize the removal of her Car; (3) that because there was no immediate need to remove the Car, the defendants had no legal authority to order the seizure of the Car, which was legally parked on private property, without advance notice and a hearing; (4) that the plaintiff's purported post-tow hearing in front of the Undersheriff was constitutionally inadequate because she did not have a meaningful opportunity to be heard on the merits of the seizure; (5) that the defendants' post-tow hearing procedure is constitutionally inadequate because it does not provide meaningful notice of one's right to request a post-tow hearing; and (6) that the defendants made no meaningful attempt to provide the last known user of the Car, plaintiff, with notice. With respect to the seizure, the defendants do not challenge plaintiff's assertion that they acted under color of state law or that she was deprived of a property interest.[9] However, the defendants do contend that they did not violate the plaintiff's Fourth and Fourteenth Amendment rights. Specifically, Defendant Muncie argues (1) that the plaintiff did not have a constitutional right to pre-tow notice or a pre-tow hearing; (2) that the plaintiff did not have a constitutional right to post-tow notice or to a post-tow hearing because the failure to afford notice and hearing was due to the plaintiff's own lack of diligence in

---

8. Because both the defendants' summary judgment motions and the plaintiff's motion for partial summary judgment raise the same issues, the court will address them together.

9. Defendant Muncie does argue that it was not acting under color of state law when it asserted its lien and eventually sold the Car to satisfy its lien.

registering and licensing her Car; and (3) that even if the plaintiff had a constitutional right to post-tow notice and a post-tow hearing, the plaintiff received actual notice when she met with the Undersheriff. The Government Defendants argue (1) that Wyandotte County's towing policy is constitutional on its face as a reasonable means to enforce a legitimate governmental interest, i.e. the Kansas motor vehicle registration laws; (2) that Wyandotte County's towing policy is constitutional as applied to the facts of this case because any delay or lack of notice to the plaintiff was caused by her failure to properly register her Car in Kansas for nearly two years; (3) that the Wyandotte County Sheriff's Department had the authority to tow the plaintiff's Car from the Complex's parking lot under the Kansas Abandoned and Disabled Vehicles Act (KADVA); and (4) Deputy Morris, who was properly on the Complex's premises under the KADVA and the manager's authority, had a reasonable basis to believe that the Car had been abandoned on private property because the Car had no license tag, two slashed tires, damage to the windshield and rear, and the VIN check indicated that it was not of record in Kansas.

### A. KADVA.

The Government Defendants contend that K.S.A. § 8–1102(b) gave them the power to tow the plaintiff's Car. Section 8–1102(b) provides in pertinent part,

Any person who abandons and leaves a vehicle on real property, other than public property or property open to use by the public, which is not owned or leased by such person or by the owner or lessee of such vehicle shall be guilty of criminal trespass, as defined by K.S.A. 21–3721, and amendments thereto, and upon request of the owner or occupant of such real property, the public agency in whose jurisdiction such property is situated may remove and dispose of such vehicle in the manner provided in subsection (a), except that the provisions of subsection (a) requiring that a motor vehicle be abandoned for a period of time in excess of 48 hours prior to its removal shall not be applicable to aban-

doned vehicles which are subject to the provisions of this subsection.

*Id.* Without specifically discussing § 8–1102(b) or citing any case law or statutory authority, the plaintiff contends that her landlord did not have the power to request and permit the Wyandotte County Sheriff's Department to tow her Car off the Complex's premises based on her rights as a lessee. Like the parties, the court has also been unable to find any authority on this subject matter. However, based on evidentiary shortcomings, the court concludes that the plaintiff's argument fails. Specifically, the plaintiff has produced no evidence (such as a copy of her lease agreement) to show that her rights as a lessee at the Complex included any right to park a vehicle on the premises. The court cannot simply assume that she had such a right, and in the absence of any evidence to support her factual position, her argument can have no legal merit. Additionally, even if she had some right to maintain a vehicle on the Complex's premises, it would be incumbent on her to demonstrate the basis of such a right and that she had complied with any preconditions on her rights, such as providing her landlord with the make, model, year, and color of her vehicle (or any other property she might claim a legal right to store outdoors on the Complex's premises), so that the landlord might know whether or not any particular vehicle parked on the property (operational or otherwise) belonged to the plaintiff, a tenant, or to a trespasser clearly subject to § 8–1102(b). Thus, because the plaintiff failed to produce any evidence supporting her contention that she had a right to park her Car in the condition in which it was found on the Complex's premises or to support her apparent contention that her landlord should have known that the Car belonged to a tenant, the court concludes that the plaintiff's claim is fatally flawed.

The court also believes that strong policy reasons justify the conclusion that a landlord can legally request a state actor, in this case the Wyandotte County Sheriff's Department, to tow away all vehicles parked on its premises that do not display proper registration or license tags, at least to the extent that the landlord has not made an enforceable agree-

ment to the contrary, on the not implausible assumption that the vehicle has been abandoned. Such a conclusion facilitates compliance with Kansas law requiring proper licensing and. registration and it enables a landlord to maintain a safe and clean living environment. Had the plaintiff, or any tenant for that matter, wished to insure that her unlicensed and unregistered Car was not towed away at the request of her landlord, she could have timely informed her landlord of her situation and negotiated a compromise. Thus, the court concludes that the plaintiff's landlord had the authority to request and permit the Wyandotte County Sheriff's Department to enter onto the Complex's premises for the purpose of car tag enforcement because there is no evidence to rebut the conclusion that the Car reasonably appeared to be abandoned.

### B. Due Process requirements.

■■■ "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the ... Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Id.* at 333, 96 S.Ct. at 902 (citations omitted). Due process is a flexible concept, and its procedural protections will vary depending on the particular deprivation involved. *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). To determine what process is required, three factors must be weighed: (1) the nature and weight of the private interest affected by the challenged official action; (2) the risk of an erroneous deprivation of such interest as a result of the summary procedures used and the value of additional procedures; and (3) the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute or additional procedures sought. *Coleman v. Watt,* 40 F.3d 255, 260 (8th Cir.1994) (citing *Mathews,* 424 U.S. at 334, 96 S.Ct. at 902–03); *Benavi-*

*dez v. City of Albuquerque,* 101 F.3d 620, 626 (10th Cir.1996).

### 1. Pre-tow notice and hearing.

Although the Tenth Circuit has not specifically addressed whether pre-tow notice and a hearing are required before a state actor, who reasonably believes that a vehicle is abandoned, tows an unlicensed and unregistered vehicle, courts presented with similar facts have held pursuant to the *Mathews* balancing test that neither pre-tow notice nor a pre-tow hearing are constitutionally required as long as prompt post-tow notice and a post-tow hearing are provided. *Scofield v. City of Hillsborough,* 862 F.2d 759, 764 (9th Cir.1988); *Davis v. Dahmm,* 763 F.Supp. 1010, 1012 (W.D.Ark.1991) ("It appears settled that municipalities authorizing the towing of unlawfully abandoned or unattended vehicles are not required by the Constitution to establish pre-deprivation notice and hearing procedures.") (citations omitted); *Soffer v. City of Costa Mesa,* 607 F.Supp. 975, 983 (C.D.Cal.1985) (holding that if the Supreme Court does not require a pre-deprivation hearing before the loss of Social Security benefits, before the revocation of a driver's license, or before the revocation of a nursing home's authority to provide a resident with nursing care at government expense, a state actor also need not provide a pre-deprivation hearing before towing what he or she reasonably believes to be an abandoned vehicle), *aff'd in relevant part,* 798 F.2d 361 (1986); *Sutton v. City of Milwaukee,* 521 F.Supp. 733, 743 (E.D.Wis.1981)(holding that pre-tow notice is only required when auto has a right to be on the public way and when the owner's identity is easily ascertainable, i.e. that the vehicle has valid registration plates), *rev'd on other grounds,* 672 F.2d 644 (7th Cir.1982); *Graff v. Nicholl,* 370 F.Supp. 974, 983 (N.D.Ill.1974)("An owner who fails to maintain the identification data required by law, and thus precludes a reasonably expeditious record search which might identify him, cannot persuasively complain when his automobile is towed without notice as an abandoned vehicle. Such lack of diligence on an owner's part justifies postponement of notice until after the towing, if notice is possible at all.").

In support of her position that the defendants were constitutionally required to provide her with pre-tow and a pre-tow hearing, the plaintiff cites and discusses four cases: *Perry v. Village of Arlington Heights,* 905 F.Supp. 465 (N.D.Ill.1995), *Propert v. District of Columbia,* 948 F.2d 1327 (D.C.Cir. 1991), *Kness v. City of Kenosha, Wisconsin,* 669 F.Supp. 1484 (E.D.Wis.1987), and *Miller v. City of Chicago,* 774 F.2d 188 (7th Cir. 1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986). As the Government Defendants correctly point out in their response brief, these cases are easily distinguishable from the facts of this case.[10]

In *Perry,* although the state actor had determined the car owner's identity and mailing address based on the car's expired license tag before towing his car as abandoned, the state actor failed to provide the car owner with notice until after the seizure. 905 F.Supp. at 466. In this case, because the plaintiff's Car did not have a license tag on it, Deputy Morris did not have the same identification method available. Deputy Morris did attempt to identify the Car's owner by running a VIN check, which indicated that the Car was not of record with the KMVD. Similarly, in *Propert,* the plaintiff's car, which had a current license tag, a current inspection sticker, valid registration, and a valid parking permit, was towed pursuant to a junk vehicle ordinance and destroyed the next day. 948 F.2d at 1328–29. In this case, because the plaintiff's Car did not have a current license tag or registration, Deputy Morris could not have easily identified the Car's owner. Moreover, Deputy Morris concluded that the Car was abandoned, not junk, and that the Car was held approximately two months before it was sold at auction.

In *Kness,* the city sent two letters to the plaintiff informing him that if he did not remove the inoperable, unlicensed, disassembled, or wrecked motor vehicles from his property, the city would tow such vehicles from his property pursuant to its Nuisance Motor Vehicles ordinance, which prevents the storage of nuisance motor vehicles on private property. 669 F.Supp. at 1487–88. The *Kness* court concluded that the defendants' denial of the plaintiff's two requests for a pre-tow hearing violated his due process rights. *Id.* at 1493. Like *Perry* and *Propert, Kness* is also distinguishable because the owner of the vehicles in *Kness* was easily identifiable because he owed the property on which the vehicles were located. In this case, however, because the plaintiff lived in an apartment complex at the time of her deprivation, Deputy Morris could not have easily identified to which tenant, if any, the unlicensed and unregistered Car belonged. Moreover, unlike *Kness,* because Deputy Morris had no way of providing pre-tow notice to the plaintiff, the plaintiff never requested and, therefore, was never denied a pre-tow hearing. Furthermore, the plaintiff's Car was towed because it was apparently abandoned, not because it was considered a public nuisance.

Finally, the plaintiff cites *Miller,* which involved the Chicago police recovering and impounding the plaintiff's stolen car, for the proposition that "... predeprivation notice and hearing represent the norm and the state must forward important reasons to justify a departure therefrom." 774 F.2d at 190–91 (citation omitted). The *Miller* court concluded that the defendants were not constitutionally required to provide the plaintiff with pre-deprivation notice based on feasibility problems and that "... there is a substantial basis for distinguishing abandoned cars from recently recovered stolen vehicles." *Id.* at 195. Assuming for purposes of these motions that such a showing is required, the plaintiff has failed to rebut the defendants' important reason why the plaintiff was not provided pre-tow notice or a pre-tow hearing, i.e., Deputy Morris had no reasonable meth-

---

**10.** The plaintiff also cites and incorporates into her brief an article by Henry Cox appearing on pages 269–78 of the Journal of the Kansas Bar Association's 1983 Winter publication entitled *Due Process and the Car: Towing, Towing, Gone.* This article states that "If the laws provide for adequate protection and safeguards for the car owner's rights then towing without prior notice or opportunity to be heard will be valid." Henry Cox, *Due Process and the Car: Towing, Towing, Gone, J.* KBA, Winter 1983, at 275. Thus, as long as the post-tow procedures comply with constitutional requirements, this article indicates that the plaintiff was not constitutionally entitled to pre-tow notice or a pre-tow hearing.

od of determining who, if anyone, owned the Car. Thus, the *Miller* case actually cuts against the plaintiff's position.

■ After considering the relevant case law, the court concludes that the Tenth Circuit would follow the general rule that a state actor is not constitutionally required to provide pre-tow notice or a pre-tow hearing to the owner of an unregistered and unlicensed vehicle that reasonably appears abandoned. *Scofield,* 862 F.2d at 764; *Davis,* 763 F.Supp. at 1012; *Soffer,* 607 F.Supp. at 983; *Sutton,* 521 F.Supp. at 743; *Graff,* 370 F.Supp. at 983. As a result, the court concludes that the defendants did not violate the plaintiff's due process rights when they caused her unlicensed and unregistered Car to be towed without providing her with pre-tow notice or a pre-tow hearing. *Id.*

### 2. Post-tow notice and hearing.

■ As discussed above, the failure to provide the plaintiff with pre-deprivation protections could violate the plaintiff's constitutional rights if the post-deprivation protections are not constitutionally adequate. *See Summers v. State of Utah,* 927 F.2d 1165, 1169 (10th Cir.1991). The Wyandotte County Sheriff Towing Guidelines provide that a person whose car is towed pursuant to the policy is entitled to a tow hearing in front of the Undersheriff within forty eight hours. It further provides that if the person chooses not to accept the Undersheriff's decision, the tow hearing will be forwarded to a district court judge for the final decision. The plaintiff does not appear to argue that these post-tow procedures violate due process requirements. Rather, the plaintiff appears to contend that her due process rights were violated based on the fact that she was not given adequate notice of her rights under these guidelines.

Without indicating how the plaintiff determined what happened to her Car, the parties' stipulated facts indicate that the plaintiff met with Undersheriff Green concerning the towing of her Car shortly after her Car was towed. As proof of ownership, the plaintiff produced the Car's expired registration, which indicated that George Petty was the last registered owner. Undersheriff Green informed the plaintiff that she needed to provide proof of current title and registration in her name as well as proof of insurance before the Car could be released to her. The plaintiff never provided such proof and never attempted to appeal the Undersheriff's position pursuant to the Wyandotte County Sheriff Towing Guidelines to Wyandotte County District Court.

The plaintiff contends that her meeting with the Undersheriff does not satisfy her due process right to a meaningful opportunity to be heard on the merits of her Car's seizure. The court disagrees. Deputy Morris based his reasonable conclusion that the Car was abandoned primarily on the fact that the Car did not have a license tag and was unregistered. At their meeting, Undersheriff Green informed the plaintiff what information she needed to reclaim her Car: a valid license tag, valid registration, and proof of insurance. The plaintiff fails to enlighten the court about any other issues, besides her failure to properly register and license her Car, that would have been pertinent to determining whether Deputy Morris' conclusion that her Car was abandoned was appropriate. The plaintiff does not even claim that she could have demonstrated that her Car was not abandoned by producing her lease or otherwise establishing her right to have left the Car where it was. In fact, the plaintiff was not even able to demonstrate that she possessed any claim of ownership to the vehicle.

The plaintiff also contends that her constitutional due process rights were violated by the fact that Undersheriff Green failed to inform her that she could appeal his decision to Wyandotte County District Court. As a preliminary matter, the plaintiff's contention is flawed because the plaintiff did not present an argument to Undersheriff Green concerning the validity of Deputy Morris' decision to tow her Car as abandoned. Thus, because the plaintiff did not challenge the validity of the tow, Undersheriff Green was under no obligation to inform of her right to appeal because there was nothing to appeal. *See Wise v. Merit Systems Protection Board,* No. 95–3664, 1996 WL 403922 at *1 (Fed.Cir. July 3, 1996) (holding that Postal Service did

not violate a duty to notify the plaintiff of his right to appeal because the plaintiff failed to inform the Postal Service that he disagreed with its position). Moreover, the plaintiff has not produced any authority requiring any of the defendants to inform the plaintiff of her right to appeal the Undersheriff's decision to Wyandotte County District Court. In fact, the court believes that due process does not create such an affirmative duty. *See Kerr v. Penn. State Troopers Assn.*, No. 93–4816, 1994 WL 585935 at *5 (E.D.Pa. Oct.13, 1994)("The court is not aware of, nor has plaintiff shown, however, any duty incumbent upon PSP [the defendant] to guide plaintiff through the adversarial process and inform the plaintiff ... of his right to appeal."), *aff'd*, 65 F.3d 162 (3rd Cir.1995). As a result, the court concludes that the plaintiff's due process rights were not violated by the fact that Undersheriff Green did not inform the plaintiff of her appeal rights.

### IV. Conclusion.

Based on the court's conclusions that the plaintiff was not entitled to pre-tow notice or a pre-tow hearing and that the defendants' post-tow procedures and conduct did not violate the plaintiff's due process rights, the court concludes that summary judgment on the plaintiff's § 1983 claim is appropriate. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2553–54. As a result, the plaintiff's claim is dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that the plaintiff's motion for partial summary judgment (Doc. # 55) is denied, the defendants' motions for summary judgment (Doc.s # 51 & 52) are granted, and the plaintiff's complaint is dismissed.

**IT IS SO ORDERED.**